### CHALKER and others *against* DICKINSON and others.

The General Assembly, by a public act, in 1783, prohibited all persons, under a penalty, from fishing with seines within certain limits in *Connecticut* river, between

A new trial having been granted pursuant to the advice of the nine Judges, (*ante* 382. 385.) the cause was accordingly tried again at *Haddam, December* term 1815, before *Trumbull, Baldwin* and *Ingersoll,* Js.

On the trial it was admitted, that the fishery in question was a common fishery, used by all the citizens of the state, until *May* 1783, when by an act of the legislature, being the 13th section of the act for regulating fisheries,(*a*) the use

the 15th day of *March* and the 15th day of *June*, except the proprietors of certain lands, who, as the act declared, should have exclusive right to use two seines of a certain length within those limits, in the waters adjoining their own lands, from *Monday* morning at sun-rise until sun-set on *Friday* evening in each week. In 1789, *A. K.* being the proprietor of land adjoining the river, within the specified limits, preferred his memorial to the General Assembly, in which he claimed the fishery as a right appurtenant to his soil; complained of the impediment which the prohibitory act had interposed; alleged that none of the evils intended to be remedied by that act would be occasioned by a limited exercise of his right; and concluded with praying the General Assembly to grant him an exclusive right to use one seine, in the river adjoining his land, under certain regulations, or in some other way to restore him to his just rights incident to his freehold. A resolve was thereupon passed, which recapitulated these representations by way of recital, without finding any fact, and then granted liberty and license to the memorialist, his heirs and assigns, during the pleasure of the legislature, to use a seine at the place described, under the same restrictions and regulations as were imposed upon the proprietors exempted from the operation of the act of 1783. In 1808, that act was repealed. Held, that the operation of the resolve in 1789, was not to grant a several fishery to *A. K.*, but only to suspend the act of 1783 as to him; and the rights of *A. K.*, and of all others regarding the fishery in question, were left, by the repeal of that act in 1808, as they were before it was passed.

(*a*) *Tit.* 70. *c.* 1. *s.* 13. The section referred to was as follows: " And whereas the obstructing of the passage of the fish into *Connecticut* river, is a public damage: *Be it further enacted,* That no person shall set or draw any seine for the purpose of catching fish, between the fifteenth day of *March* and the fifteenth day of *June,* in any year, south of an east and west line from *Saybrook-fort,* so called, within one mile and an half east and west, on each side of the mouth of said river, except in the coves called and known by the name of *Lynde's* cove and *Griswold's* cove, and except the proprietors of the lands on each side of said river known by the names of *Eastern-point* and *Lynde's-point,* who shall have exclusive right to draw or use two seines, at discretion, within the aforesaid limits, in the waters adjoining their own lands,

*Hartford,*
June, 1816.

Chalker
*v.*
Dickinson.

thereof was wholly prohibited from the 15th day of *March* to the 15th day of *June* in every succeeding year. At that time, and long afterwards, one *Ambrose Kirkland* was the proprietor of a piece of land fronting the west side of *Connecticut* river, and extending on the river about twenty-five rods, the southern line being about fifty rods below *Fort-Point,* and about fifty-five rods above *Pipestave-Point.* In *October* 1788, *Kirkland* preferred a memorial to the General Assembly, in which he stated, that he was seised in fee of said piece of land, and had, for a long time, enjoyed a right and privilege appurtenant to his soil of drawing seines and taking fish, in the season thereof, to his profit and advantage ; that by force of said act he was deprived of the principal advantage which the God of nature and the laws of the land attached to his freehold ; that as a free citizen, and enjoying rights in common with his fellow citizens, invested with a freehold purchased for a valuable consideration, he conceived, by the laws of the land, and by the laws of nature, he was justly entitled to take all the profits and advantages naturally arising therefrom ; that it appeared from the preamble to said act, that the mischief to be remedied, was the obstruction to the passage of the fish up the river, occasioned by the drawing of a number of seines at the mouth ; that the memorialist's land lies at the distance of about one mile and a quarter north of the mouth ; that the channel of the river is half a mile wide against his said land ; and that the drawing of one short seine of about twenty-five rods length, at this place, would not, under proper regulations, in the least impede or obstruct the course of the fish up the river, any more than what the seine would actually take, while the using of one seine there would be annually attended with public advantage. The memorialist, therefore, prayed the General Assembly to grant him an exclusive right of drawing and using one seine of twenty-five rods length, in the river adjoining his said land, under such regulations as should

from *Monday* morning at sun-rise until sun-set on *Friday* evening in each week, and no more ; and neither of said seines shall be of greater length than twenty-five rods. And every person that shall be convicted of any breach of this paragraph of this act, shall pay a fine of thirty-four dollars ; one half to the prosecutor, and the other half to the treasury of the county ; and shall also forfeit the seine, ropes, and other utensils used for catching fish, contrary to this paragraph of this act."

appear fit, or in some other way restore to him his just rights incident to his freehold. At an adjourned session of the General Assembly in *January* 1789, the following resolve, or private act, was passed. " Upon the memorial of *Ambrose Kirkland* of *Saybrook* in the county of *Middlesex,* shewing to this Assembly, that he is seised in fee of a piece of land situate in *Saybrook,* about twenty-five rods south of *The Fort,* so called, adjoining the river on the east ; and that he long enjoyed the privilege of drawing a seine for catching fish, in the season of fishing, at said place, until by an act of this Assembly passed in a late session, entitled *An Act for encouraging and regulating Fisheries,* all persons are prohibited from setting or drawing any seine for the purpose of catching fish between the 15th day of *March* and the 15th day of *June* in any year, south of the east and west line from *Saybrook-fort,* so called ; and that he, by said act, is totally prevented from using his said privilege of fishing at his fishing-place, aforesaid ; and that by his using his fishing-place none of the mischiefs will accrue to the community or individuals, which said statute was made to prevent ; praying for relief, &c. as per memorial.

" *Resolved by this Assembly,* that said memorialist have liberty, and liberty and licence are hereby granted to him, and his heirs and assigns, to use, occupy and improve the said fishing-place for the purpose of setting a net or seine, and for drawing a seine for the purpose of catching fish, in the season of fishing, at the times, and under the same restrictions and regulations that are in said act provided respecting the fishing-places at *Lynde's* cove and at *Griswold's* cove, any thing in said act notwithstanding, during the pleasure of the General Assembly." The plaintiffs contended, and produced evidence to shew, that *Kirkland,* at the time of obtaining this grant, was in the exclusive occupation of the whole ground from *Fort-Point* to *Pipestave-Point,* as a fishing-place ; and that he, together with the plaintiffs, who claimed under him, had ever since continued in such occupation, and had the possession of and title to said fishing-place when the trespasses complained of were committed. It appeared, that the plaintiffs used a seine twenty-five rods long only, immediately after their grant ; but continued gradually to lengthen it from year to year ; and that in the year 1813, and occasionally for more than five years before, they had

fished with two seines, each about sixty rods in length. The plaintiffs contended, that they had proved to the jury, that the defendants committed trespasses in all parts of said fishing-place; particularly, that they run their seine above the south line of the plaintiffs' land, and up against the middle thereof, and obstructed the plaintiffs in their fishing, as alleged in the declaration. The plaintiffs also contended, that they had proved that the front of their land was not of sufficient extent to allow them a fishery of any use or advantage, without going both above and below their land, as the current or tide should require. They now waived all claim of title from the length of time during which they had possessed the fishery. The act of *May* 1783 (*tit. 70. c. 1. s. 13.*) was repealed in *May* 1808, (*tit. 70. c. 9. s. 2.*) previous to the alleged trespasses. The defendants contended, 1. That said private act of the General Assembly was void on the ground of misrepresentation in the memorial, and was forfeited by misuser: 2. That said act, if valid, did not confer on *Kirkland* any right to the fishery, but merely *suspended* the penal law of *May* 1783, *as to him;* and had no continuing effect at all after the repeal in *May* 1808: 3. That, at any rate, said private act had no operation south of the front of *Kirkland's* land; and that in point of fact the defendants did not draw any part of their seine or tackle in front of said land, nor so as to interfere with or disturb the plaintiffs in the act of drawing their seine. And the defendants prayed the court to charge the jury on the points of law accordingly. The charge was as follows: " The court are of opinion, that the act of the General Assembly amounts to a grant of the fishery in question, during the pleasure of the Assembly, which, it is agreed, has never been revoked; that it is not void on the ground of any false representations on the face of it, or of the memorial on which it was granted; and that although you should find that the mode of fishing has been varied, and that a much longer seine has been used than the grant gave a right to use, this does not render the grant forfeited. The question then arises, what is the extent, and what are the limits of the fishing-place thus granted? This depends chiefly on the construction of the grant. And the court are of opinion, that the fishing-place granted is not confined merely to the front of the plaintiffs' land, but will of course extend so far above and below in the river as may

be necessary to sweep over the ground with a seine of twenty-five rods in length, in order to the fair beneficial enjoyment of the grant." The jury found a verdict for the plaintiffs; and the defendants moved for a new trial on the ground of a misdirection. The questions of law arising on this motion were reserved for the consideration and advice of the nine Judges.

*N. Smith* and *Sherman* in support of the motion.

*Daggett* and *Staples,* contra.

SWIFT, Ch. J. The question is as to the effect of the resolve of the General Assembly passed on the memorial of *Ambrose Kirkland.*

To determine the nature and effect of the grant, we must consider the object of the party, and the intent of the legislature. Though some words may be used which might be proper in the grant of exclusive rights, yet these may be explained by the allegations in the memorial; and we must take into view all that is said to ascertain the intent.

The memorial alleged a right of fishery in the memorialist, and complained that this right had been infringed and destroyed by a public act prohibiting him to exercise his right. His object was not to obtain a new right; he supposed that to be complete. It was to obtain a suspension of the general law as it respected himself, for the purpose of exercising an existing right. The legislature unquestionably supposed, according to the common opinion prevalent at that time, that the memorialist had a right to fish in front of his land adjoining *Connecticut* river. They could have had no idea of giving him a new right; their intent was to suspend the operation of the law of which he complained, so far as it respected the exercise of an existing right. For this purpose, they have made use of proper and appropriate words. They *grant liberty and licence to him, and his heirs and assigns, to use and occupy the fishing-place, any thing in the act prohibiting it to the contrary notwithstanding.* These expressions are precisely proper; admitting it to be their intent to repeal that law so far as it respected the memorialist; but if they had intended to confer a new right, to have made a grant of an exclusive fishery, a very different language would have been proper.

The extension of the licence to *heirs and assigns* does not vary the construction. It was considered that the right of fishery was appurtenant to the adjoining land; and the intent was, that the privilege should descend to heirs and be transferred to assigns. This was proper, admitting nothing was intended but an exemption from the penalties of the law.

The reference to *Lynde's* cove and *Griswold's* cove was not to define the nature or extent of the grant, but merely the limitation of it. It authorises him to fish at the same times, and under the same restrictions and regulations, as at these places. It no where says, that he shall have the same right; and it would be strange to say, that a *limitation* should *extend* a grant.

It appears to me, on a full view of the subject, that the resolve of the Assembly only repealed the operation of a general law so as to give the memorialist a licence to fish in the same manner as though that law had never been made; and that when the general law was afterwards repealed, it placed all those who lived on this part of the river in the same situation as they were before the law was passed; and of course, that the charge to the jury that the resolve amounted to a grant of a right of fishery was incorrect.

I would advise to grant a new trial.

EDMOND, SMITH and BRAINARD, Js. concurred in the opinion delivered by the Chief Justice.

BALDWIN, J. The correctness of the charge given in this case depends principally on the validity of the grant to *Ambrose Kirkland*. It is claimed, that it is void, because the representation of facts on which it was grounded was fraudulent, and the legislature thereby deceived.

It is not necessary in this case to enquire how far the doctrine of misrepresentation may be carried to avoid a grant, by collateral attack; for it does not appear to me, that any fraudulent statement or misrepresentation of facts has been made. *Ambrose Kirkland* in his memorial states, that his land abutted on the river; that he had long enjoyed the right of drawing seines and taking fish upon it, till prohibited by an act of the legislature; that this act deprives him of the natural advantages appertaining to his freehold,

and of course of much of its value ; that the mischief intended to be prevented by that act, can be avoided by suitable regulations consistent with the enjoyment of his right ; and he therefore prays the General Assembly to grant to him an exclusive right of fishing in the river adjoining his land, under such regulations as the legislature may prescribe. The memorialist no where states an exclusive right in himself to the fishery. He does indeed claim the right of fishing in the waters adjoining his own land as a right appurtenant. This, though not acknowledged in the extent claimed by some, is undoubtedly correct, and is exclusive as to the right of the shore for drawing. If, then, the right of sweeping the river is common to all mankind, the memorialist having that right, and the exclusive right of the shore, might fairly make the representation he did.

Although the prohibiting act was the cause which led him to address the legislature, yet the scope of his memorial evidently goes further than a dispensation of the penalty. He prays for an exclusive grant ; knowing that others so circumstanced had it. The language of the legislature is that of a grant : " Licence and liberty is hereby *granted to him, and his heirs and assigns,* to use, occupy and improve the said fishing-place, &c. for the purpose of catching fish in the season of fishing, at the times, and under the same restrictions and regulations that are in said act provided, respecting the fishing places at *Lynde's* cove and *Griswold's* cove, any thing in said act notwithstanding, *during the pleasure of the General Assembly.*" This language admits of no construction. It is not a mere dispensation of the penalties. It is a *grant,* under specified restrictions and regulations, during the pleasure of the General Assembly.

But it is further claimed, that if the resolve is considered as a grant, it has ceased by the repeal of the act to which it refers for its regulations. This principle, if correct, would introduce a limitation not contained in the grant. That is neither limited by the existence of that act, nor is that the basis of it. The reference to the act is merely for regulations, which, when adopted, do not depend at all on the continuance of that act. They continue the same, whether the act remains in force or is repealed. The only limitation in the grant, is, the pleasure of the General Assembly. It may by them be revoked, but remains in force until, in

express terms, they shall manifest their pleasure that it cease.

If the grant claimed exists, it is admitted it cannot be defeated collaterally, by third persons, on the ground of misuuser.   But

It is claimed the court erred in the construction they gave the grant ; and that they ought to have limited its extent to the waters in front of the plaintiffs' land.   I am of opinion, that the subject matter of the grant ought to be taken into consideration, and that construction given which will ensure the beneficial effect intended.   A fishing-place is necessarily undefinable by metes and bounds.   The ebb and flow of the tides, the strength of the current, and other circumstances, will require, at different times, a different direction and extent of sweep to the same length of seine, and yet the fishing-place will remain the same.   I think the court gave a reasonable and fair construction of the grant when they said, it was not confined to the front of the plaintiffs' land, but will extend so far above and below in the river as may be necessary to sweep the ground with a seine twenty-five rods in length, in order to the fair and beneficial enjoyment of the grant.

As I cannot say that the grant is void from misrepresentation, or forfeited by misuser, and am persuaded the court gave a fair construction of its extent, I find no cause for a new trial.

TRUMBULL and GODDARD, Js. were of the same opinion.

GOULD, J.   I am of opinion, that the direction to the jury, upon the construction of the resolve of the legislature, in 1789, was wrong.   It is clear, according to a rule heretofore established, that the fishery in question did not belong to *A. Kirkland*, in severalty, *before* that resolve was passed ; and the inquiry now is, whether the resolve conferred it upon him.

By the general prohibitory law of 1783, *all* persons were forbidden, under a penalty, to fish, with seines, at the place in question.   The resolve of 1789, granted to *Kirkland*, his heirs. &c. permission to use a seine there, the general prohibition notwithstanding.   The statute of 1808, has now repealed the prohibitory act, and thus extended or restored

the same permission, (the fishery having been originally a *common* one), to *all* persons, unless the resolve amounted to a grant of a several fishery to *Kirkland,* under whom the plaintiffs claim. Does the resolve, then, contain such a a grant ? Or is it a mere *exemption* to *Kirkland,* his heirs and assigns, from the operation of the prohibitory act ?

In construing the resolve, we have, doubtless, a right to recur to the recital, which precedes it, and the memorial, upon which it is founded, precisely as we might, in any case, consult the preamble of a statute. Now *Kirkland* in his memorial does not even ask for the grant of an original right, or, one which he did not, *before,* claim, as his *own.* He represents the fishery as *his ;* complains of the impediment which the statute of 1783, had interposed, to the exercise of *his* privilege ; alleges, that " none of the mischiefs," intended to be prevented by that statute, would be occasioned by the limited exercise of his right ; and concludes with praying for the " exclusive right," or—which he represented as the same thing—to be " restored" to his original right. The recital, introductory to the resolve, without finding any fact, merely recapitulates these several representations ; and the resolve then grants to him, his heirs, &c. " liberty and licence," to use a seine at the place described, under certain restrictions, during the pleasure of the legislature. It does not import to grant to him, what was not before his own,—as a several fishery clearly was not ; or to establish a right already vested in him. It does not even contain the word, *right, title, interest, franchise,* or any term of similar import ; but grants " *liberty* and *licence,*" (terms almost appropriate to denote a matter of mere *favour,* or *indulgence,*) during the pleasure of the legislature. From this review of the proceedings, which terminated in the resolve of 1789, the result appears to be, that the utmost amount of *Kirkland's* claim, or request, was, that he might be restored to a supposed right, (which, however, never existed,) *by an exemption from the penalty of the statute* of 1783 : and that the legislature granted the exemption, during its own pleasure, without deciding, or intending to decide, the question of right. This, I think, appears from the whole scope of the proceedings. If so, it follows, that, by the subsequent repeal of the statute of 1783, the rights of *Kirkland,* and of all others, in relation to this fishery, are

left, precisely as they were, before that act was passed; upon which supposition *Kirkland* never owned the several fishery, now claimed by the plaintiffs; and the plaintiffs, of course, do not own it.

The words, in the resolve, " under the same restrictions and regulations," as are prescribed for " *Lynde's* cove and *Griswold's* cove," obviously relate only to the *mode of exercising* the right or privilege, intended to be granted; not to the *character*, or *nature*, of that right or privilege.

I am of opinion, that a new trial ought to be granted.

HOSMER, J. gave no opinion, having been of counsel in the cause.

New trial to be granted.