[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION DEFENDANTS' MOTION TO STRIKE FROM JURY DOCKET DATED JUNE 4, 1991
I.
Keith Czarsty has brought a four count amended complaint dated December 13, 1990 after he was expelled November 1988 from the University of Bridgeport School of Law (the "Law School"). In addition to the Law School, the other party defendants are members of its community; namely, James Trowbridge, John Morgan, William Dunlap and Terence Benbow. This litigation arises out of the Law School expelling Czarsty upon his suffering a criminal conviction in the United States District Court in Connecticut.
The amended complaint is in four counts, which Czarsty described as follows: "[t]he first count is in tort, the second count is in contract, the third is a CUTPA claim, and the fourth states a cause of action in unjust enrichment." Plaintiff's Memorandum in Opposition to Defendants' Motion to Strike From Jury Docket, dated June 7, 1991.
The motion is denied.
 II.
In the amended complaint, Czarsty alleges during August of 1986 he commenced his studies at the Law School and in April of 1987 was arrested and criminally charged. He complains that thereafter during discussions with the Associate Dean of the Law School, William Dunlap, Dunlap indicated to Czarsty that Dunlap would not turn the circumstances arising out of the criminal prosecution over to the Law School's discipline committee. Czarsty complains, however, that subsequently the discipline committee charged him with violating a provision of the student conduct code for the Law School by engaging in an act "which reflects upon his fitness to practice law." Amended Complaint, December 13, 1990, first count, paragraph eight. In September of 1988, the discipline committee held a hearing and ordered Czarsty's expulsion from the Law School. Czarsty then, according to his amended complaint, requested Terence Benbow, Dean of the Law School, to reverse the discipline committee's decision but the dean denied this request. In addition to the Law School, its two deans, Benbow and Dunlap, James Trowbridge, Chairman of the Discipline Committee, and John Morgan, the Law School's advocate to the Discipline Committee, are parties defendant.
In the first count of this amended complaint, Czarsty alleges that the disciplinary charges, proceedings and ultimate expulsion by the committee represented the illegal taking of a property right from him and that this taking was wilful, arbitrary, malicious, in bad faith and contrary to public policy. Here, he also alleges that he has no adequate remedy at law because of his CT Page 6713 resulting inability to complete a law school education and thereafter engage in the practice of law. In count two, Czarsty complains that the Law School breached its contract to educate him and again he pleads since he is unable to complete his education and enter the practice, he has no adequate remedy at law. In the fourth count, Czarsty complains that the Law School has been unjustly enriched by the amount of tuition he has paid to it prior to his expulsion. Thus, from the manner in which Czarsty has framed counts one and two and from the tenor of count four sounding in unjust enrichment, it is clear that in those three counts he seeks only equitable relief.
In count three of the amended complaint, Czarsty sets forth a claimed violation by the defendants of the Connecticut Unfair Trade Practices Act; Conn. Gen. Stat. Sections 42-110a et seq. Into this count, he incorporates many of the allegations found in count one: the Law School's expulsion order was a taking of the Czarsty's property right, and count two: the expulsion order represented a breach of the Law School's contract with Czarsty to educate. After setting forth his complaint in this count of the Law School's illegally depriving him of a property right and breaching its contract to educate him, Czarsty complains that this conduct "constitutes a violation of the Connecticut Unfair Trade Practices Act C.G.S.A. Section 42-110a et seq. on the part of this [Law School] in that said actions by this [Law School] were immoral, unethical, oppressive and unscrupulous and caused financial injury to the Plaintiff." Amended Complaint, December 13, 1990, third count paragraph twenty-seven.
Czarsty seeks the following relief:
1. Specific performance of the contract to educate;
2. An injunction against the University of Bridgeport School of Law from prosecuting any disciplinary charges against the plaintiff based on conduct that occurred prior to the date that judgment in this matter is entered;
3. A writ of mandamus ordering the University of Bridgeport School of Law to reinstate the plaintiff as a student with all rights and privileges of a student at the University of Bridgeport School of Law;
4. Money damages; CT Page 6714
5. Punitive damages;
6. Punitive damages pursuant to C.G.S.A. Section 42-110g(a);
7. A reasonable attorney's fee;
8. Such other and further relief as in law or equity may appertain.
Amended Complaint, December 13, 1990, Prayer for Relief.
 III.
This court exercises jurisdiction over both equitable and legal causes of action, Conn. Gen. Stat. Section 52-1, and our rules of practice permit both types of claims to be presented in this same lawsuit, Conn. Practice Bk. Section 133. However, the court may strike a case or matter from a jury list if it is improperly placed there. Conn. Practice Bk. Section 282. The Connecticut Supreme Court in Skinner v. Angliker, 211 Conn. 370
(1989), set forth the standards used to determine whether a party is entitled in this state under its constitution to a trial by jury.
 The constitution of Connecticut, article first, section 19, states that `[t]he right of trial by jury shall remain inviolate.' This particular provision of our constitution has been consistently construed by Connecticut courts to mean that if there was a right to a trial by jury at the time of the adoption of the provision, then that right remains intact. It is generally held that the right to a jury trial `exists not only in cases in which it existed at common law and at the time of the adoption of the constitutional provisions preserving it, but also exists in cases substantially similar thereto. . . .' At common law, `legal claims [were] tried by a jury, [and] equitable claims [were] tried by a court. . . .' Equitable actions, therefore, are not within the constitutional guarantee of trial by jury.
(Citations omitted). Skinner, 211 Conn. at 373-74. CT Page 6715
In general, actions created by statute subsequent to the adoption of the state constitution do not fall within its guarantee of a jury trial. Bishop v. Kelly, 206 Conn. 608, 618
(1988). However, "[a] party to [a statutory] proceeding cannot . . . be deprived of the constitutional right to try his cause to the jury if it involves a question which was properly triable to a jury prior to 1818." Swasson v. Boschen, 143 Conn. 159, 166 (1956). Accord Skinner v. Angliker, 211 Conn. at 375; Windham Community Memorial Hospital v. Town of Windham, 32 Conn. Sup. 271, 273 (C.P. 1975). Thus, whether an issue emanating from a statutory proceeding is triable to a jury depends on our making an historical inquiry as to whether the issue itself or "its nearest historical analog" was a jury matter when our state constitution was adopted in 1818. Skinner v. Angliker, at 377-78, quoting Goar v. Compania Peruanna de Vapores, 688 F.2d 417, 427 (5th Cir. 1982).
In framing count one (deprivation of property right) and count two (breach of contract to educate), Czarsty alleged that he has no adequate remedy at law. Thus, those two counts sound only in equity. His fourth count is framed in unjust enrichment, which is essentially an equitable action. Providence Electric Co. v. Sutton Place, Inc., 161 Conn. 242, 246 (1971). Accordingly, counts one, two and three sound in equity for a trial without a jury.
The architecture of the CUTPA claim in count three is another matter. Here, Czarsty, has alleged that the Law School by its proceedings leading to its expulsion order deprived him of a "property right" and breached its contract to educate him. Deprivation of property rights was cognizable for a jury in this state prior to 1818 as was a claim for breach of contract. See e.g., Leavenworth v. Baldwin, 2 Day 317 (1806) (action of trespass tried to a jury); Stocking v. Sage, 1 Conn. 518 (1816) (action of nature or collateral to an essentially equitable counterclaim, and thus a jury trial was not warranted. See CSB Financial Corp., 3 CTLR at 655 (defendants' special defenses and counterclaims which state legal claims are ancillary to the foreclosure action which is equitable); Connecticut Bank Trust, 5 CSCR at 818 (the essence of defendants' counterclaims is equitable and that claims for legal relief are merely supplemental to any equitable relief sought); Hebron Road Assoc., 4 CSCR at 847 (major thrust of the counterclaim is the equitable defense of misrepresentation and CUTPA claim is merely collateral to it); Gorbach Properties, 4 CSCR at 430 (counterclaim which asserts defenses of usury and unconscionability is essentially equitable and legal CUTPA claims are merely collateral to it).
We conclude that the issues presented by Czarsty in count three pursuant to the Connecticut Unfair Trade Practices Act CT Page 6716 involve rights and remedies (damages) rooted in our common law and are justiciable before a jury prior to 1818 in this state. Consequently, we deny the motion to strike from the jury docket.
WILLIAM PATRICK MURRAY