## Colonial Assurance Co. v. National Fire Insurance Co.

1. INSURANCE—*Transmission to Insured of Fact of Cancellation by Special Agent is Final.*—The transmission to the insured of the fact of cancellation, by a special agent of the insurer who was authorized to cancel on notice, is final; and a subsequent arrangement between him and the insured to let the policy stand is immaterial, as it would be a new discretionary act beyond the power of a special agent.

2. SAME—*Authority of Special Agent to Revive a Policy Canceled by the Company, Not to be Presumed.*—Authority of a special agent to revive a canceled policy already rejected by the company can not be presumed.

Assumpsit, upon certificates of re-insurance. Appeal from the Circuit Court of Cook County: the Hon. OLIVER H. HORTON, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed. Opinion filed December 4, 1903.

This is a suit brought by appellee to recover upon certificates of re-insurance, issued by appellant.

The facts upon which the suit is based are substantially as follows: Appellant issued two certificates of re-insurance bearing date respectively September 12 and 20, 1899, which were attached to and subject to the terms and conditions of an open policy, issued to appellee.

By their terms these certificates re-insure appellee against loss or damage by fire on the latter's liability under policies which it had issued to Schwarzschild & Sulzberger Company at Kansas City, Kansas. The certificates conclude as follows:

" This certificate shall not be binding until countersigned by Worthington & Co., the authorized special agents of this company at Chicago, Ill.

WORTHINGTON & Co.,
Special Agents."

The thirtieth day of September, 1899, Worthington & Co., special agents of appellant at Chicago, received from appellant's managers in New York the following letter, dated September 27, 1899:

" GENTLEMEN :—D. R. 1352 and 1353 Washington and 1888 and 1946 Colonial re-insurance of National of Hartford,

property of Schwarzschild & Sulzberger Co.   We will have to ask you to take up all these policies as we have decided to go off this plant on account of the consequential damage clause.   Your prompt attention will oblige.

Very truly yours,<br>
GEORGE A. STANTON & Co.,<br>
General Managers."

September 30th, the date upon which Worthington & Co. received the foregoing letter, was Saturday, and Mr. Worthington at once took the letter to the office of appellee and it was handed to one of appellee's assistant general managers. Afterward, on the same day, Worthington wrote and delivered before noon of that day the following, which is addressed to Fred S. James & Co., managers of the National Insurance Co. of Hartford, Conn., and dated Chicago, September 30, 1899.

" GENTLEMEN :   On account of the consequential damage clause in form of policy covering plant of Schwarzschild & Sulzberger Co., at Kansas City, our companies have decided to decline the risk and have instructed us to recall the following re-insurance certificates issued to National Ins. Co.

No. 1352, Wash.  Assr. re-ins.  National No......724030
"   1353,    "      "      "       "      "  .....724030
"   1886, Colonial "      "       "      "  .....724030
"   1946,    "      "      "       "      "  .....724031

Kindly see that the above certificates are returned to us. In the event of the objectionable being removed from policy form we presume that our companies would remain on the risk.

Very truly yours,<br>
WORTHINGTON & Co.,<br>
Special Agents."

Early on the morning of the 6th of October, the property described in the policies above mentioned, was partly destroyed by fire.   The loss was adjusted and on the 20th day of November, 1899, appellee paid to Schwarzschild & Sulzberger Co. the sum of $9,391.13 on account of said loss. Thereupon appellee delivered to appellant proofs of the loss and demanded of appellant the latter's proportion of the same, upon the theory that the re-insurance certificates referred to were still in force.

It is claimed by appellant that the certificates of re-insurance were canceled September 30, 1899, the cancellation taking effect five days thereafter, and before the loss of October 6th occurred. The cause was submitted to the court, a jury having been waived, and the trial court held that the certificates in question were not canceled by the notice to appellee of said date, and were in full force and effect at the time of the fire. Judgment was rendered accordingly, from which judgment this appeal is prosecuted.

MYRON H. BEACH, attorney for appellant.

BATES, HARDING & ATKINS, attorneys for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This controversy presents the question whether the certificates issued by appellant re-insuring appellee upon the latter's liability under its policies to Schwarzschild & Sulzberger Company, were in force at the time when, by the fire of October 6, 1899, a loss occurred under said policies, which appellee was required to pay. No question of payment or return of premium arises. It is claimed by appellant, first, that the presentation to appellee's agents upon the morning of September 30, 1899, of the order from appellant's general managers to the Chicago agents of the latter to take up all appellant's policies on the property of Schwarzschild & Sulzberger Co., "as we have decided to go off this plant on account of the consequential damage clause," was a sufficient notice of cancellation; and, second, that in any event the certificates were canceled by the formal notice delivered the same day to appellee's managers at Chicago.

The certificates of re-insurance under consideration provide that they are "issued under and subject to the conditions, agreements and stipulations" of the open policy issued by appellant to appellee, to which said certificates were attached. This open policy provided that it should "be

canceled at any time at the request of the insured, or by
the company, by giving five days' notice of such cancella-
tion." If, therefore, appellant gave notice of cancellation
five days before October 6, 1899, when the loss occurred
for which appellee seeks to recover in this suit, then the
certificates in controversy were not in force and appellee is
not entitled to recover.

The evidence is not disputed that the letter forwarded
by appellant's general managers to its Chicago agents
directing the latter to take up the policies in controversy,
was taken on September 30, 1899, to appellee's office, where
it was read by one of the latter's employes and handed to
appellee's assistant general agent. Appellee was thus
informed of the instructions given by appellant to its Chi-
cago agents to "take up" or cancel these policies; and
while it may be true, as argued by appellee, that this letter
was not in form a cancellation of the certificates, it was a
distinct notice to appellee that appellant had ordered the
cancellation; and served upon appellee as it was constituted,
we think, a "notice of such cancellation," sufficient to meet
the requirements of the policies in that respect, and termi-
nate the liability five days thereafter. Springfield F. &
M. Ins. Co. v. McKinnon & Call, 59 Texas, 507, 508, also
Schwarzschild v. Phœnix Co., 115 Fed. Rep. 653, 656, and
cases cited.

It is, however, urged in behalf of appellee that this notice
was waived by the phraseology of a later notice served
upon appellee the same day. This later and formal notice
of cancellation, after stating why the re-insurance certifi-
cates in controversy were recalled and describing them, con-
cludes as follows: "Kindly see that the above certificates
are returned to us. In the event of the objectionable
(clause) being removed from policy form, we presume that
our companies would remain on the risk." This is signed
"Worthington & Co., special agents." Appellee's counsel
contend that this was merely a conditional notice of can-
cellation. We can not concur in that view. Appellee was
explicitly told by the notice that the companies had
"requested us to recall" among others, the re-insurance cer-

tificates in controversy here, and it was requested to see that these were "returned to us." There is nothing in the sentence following that in any way contradicts or modifies this positive recall of the certificates, or that conflicts with the letter of instructions from appellant which had been shown to appellee earlier in the day. This concluding sentence expresses a mere opinion of the special agents, that the companies, of which appellant was one, would remain on the risk in the event the objectionable consequential damage clause was removed. It did not contain any agreement to remain on the risk even in that event. It does not make any proposition to "remain on the risk" upon condition that the objectionable clause shall be removed, and if it had, there is no evidence that appellee ever accepted or offered to accept the suggestion, or indicated an expectation that appellant would remain. It was not until October 28, 1899, after the cancellation had taken effect, and after the loss had occurred, when appellee was proposing to make the claim against appellant which it seeks to enforce in this suit, that a letter was written to appellant, in which appellee says it had communicated with its agents and received reply that the objectionable clause would be eliminated or its line reduced; but that its agents were unable to have the clause eliminated. If, as its counsel argue, the letter of October 28th shows that appellee was led to believe that it had a reasonable time to secure the elimination of the objectionable clause, that letter also shows that it had been unable to have the objectionable clause removed. It does not show that appellee had been, nor is it plain how it could be misled by the notice. The notice was not equivocal. It was explicit. It was not a notice of a mere intention, but an actual recall or cancellation of the policies.

This conclusion makes it unnecessary to consider appellee's contention that it understood from the notice of September 30th, that it had a reasonable time after receiving it to secure the elimination of the clause, and that such reasonable time had not expired when the fire occurred. It may be said, however, that the parties had agreed among themselves as to the time when a notice of cancellation

should take effect; and if for the sake of the argument we could assume that the notice of September 30th did amount to a cancellation only on condition that appellee failed to remove the objectionable clause from the policy form within a reasonable time, yet the contract between the parties provided that the notice should take effect in five days, and a reasonable time to fulfill such condition, in the absence of any express agreement to the contrary, ought not in fairness to be regarded as extending beyond the time fixed by the parties themselves in their contract.

Worthington & Co. were entitled "special agents" of appellant in the certificates of re-insurance and as such signed the formal notice of cancellation. Appellee therefore had notice of the special character of their agency and had received notice of the specific instructions under which they were acting. These gave no discretion to the special agents to waive or postpone taking up the policies. "Prompt attention" was called for. It does not appear that the agents had authority to extend the time for cancellation or to retain the policy in force, had they wished or intended to do so by the concluding sentence of the notice under consideration. On the contrary it appears that if they ever had such authority it was revoked by the letter of instructions which they received September 30th and showed appellee the same day.

In Biddle on Insurance, Sec. 376, it is said:

"The transmission to the insured of the fact by a special agent of the insurer who was authorized to cancel on notice, is final; and a subsequent arrangement between him and the insured to let the policy stand is immaterial, as it would be a new discretionary act beyond the power of a special agent."

As said in Hartford Fire Ins. Co. v. Reynolds, 36 Mich. 502, 507, it would require evidence of authority in the agent which could not be presumed, to revive a canceled policy already rejected by the company. We do not regard Ætna Ins. Co. v. Maguire, 51 Ill. 342, cited by appellee, as in point.

The judgment of the Circuit Court is reversed.