[Civ. No. 3208.   Second Appellate District, Division Two.—December 24, 1920.]

ROY R. LAUMAN et al., Respondents, v. THE CONCORDIA FIRE INSURANCE COMPANY OF MILWAUKEE, WISCONSIN (a Corporation), Appellant.

[1] FIRE INSURANCE—CANCELLATION OF POLICY—NOTICE TO INSURED—AUTHORITY OF BROKER TO ACCEPT NOTICE—CUSTOM AND PRACTICE. A firm whose practice and custom, in relation to the cancellation of insurance policies, is to protect the assured in some other company if possible, and to notify him of the cancellation of his policy by either sending him a new policy or advising him that they cannot replace it, and requesting a return of the policy, are mere brokers, and as such are without authority to accept notice of cancellation.

[2] ID. — RIGHT OF BROKERS TO CANCEL POLICY — BELIEF OF INSURANCE AGENT—EVIDENCE.—In this action on a fire insurance policy, there having been no evidence of any facts upon which the agent who placed the insurance could base an opinion which would justify a conclusion on his part that the firm whom plaintiff had instructed to keep his property insured had authority to receive notice of cancellation for plaintiff of any policy, except as pro-

vided by the terms of the policy and in accordance with the custom and practice of their office, the trial court did not commit error in denying the defendant the right to prove by such agent that he thought, or was of the opinion, or believed, that such firm had had the right to cancel the policy of insurance.

[3] ID.—AGENCY TO PROCURE INSURANCE—POWER TO CONSENT TO CANCELLATION — USAGE. — An agency to procure insurance is ended when the policy is procured and delivered to the principal, and the agent has no power after the policy is so delivered to consent to a cancellation, or to accept notice of an intended cancellation by the insurer; and evidence of a usage to give notice to a broker is inadmissible where the policy requires notice to the insured.

[4] ID.—OBJECTION TO PROOF OF LOSS—NONCOMPLIANCE WITH POLICY —ASSENT TO AMOUNT CLAIMED.—Where a policy of fire insurance covering a dyeing and cleaning establishment covers loss to the extent of a specified amount in merchandise contained in the building, provided the insured shall be liable by law for loss or damage thereto or shall have specifically assumed liability therefor, and provides that the insurance company "shall be deemed to have assented to the amount of the loss claimed by the insured in his preliminary proof of loss, unless within twenty days after the receipt thereof . . . the company shall notify the insured in writing of its partial or total disagreement with the amount of loss claimed by him, and shall also notify the insured in writing of the amount of loss, if any, the company admits," the insurance company, by confining its objections to the payment of loss claimed to the failure of the insured to show that the goods destroyed or damaged were his property, or that he was liable by law for any loss or damage to the goods, or that he had specifically assumed liability therefor, assents to the amount of loss claimed.

[5] ID.—GENERAL DENIAL OF LIABILITY — INSUFFICIENCY OF. — Under such policy, a general denial by the insurance company of all liability would not meet the requirements of its obligation under the policy to designate the different articles for which it disclaimed liability.

[6] EVIDENCE—PRIVATE TRANSACTIONS—FAIRNESS OF—PRESUMPTION.— The presumption is that private transactions have been fair and regular, and this presumption, if not controverted, is satisfactory.

[7] ID.—COMPETENCY OF—TIME TO OBJECT.—The time to raise the point of the competency of particular evidence is during the trial of the case, if it is desired to have such objection reviewed upon appeal.

3. When insurance broker is agent for insured as to cancellation of policy, note, 38 L. R. A. (N. S.) 623.
When insurance agent is agent for insured as to notice of cancellation of policy, note, 20 L. R. A. 283.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. W. Hindman for Appellant.

Paul H. McPherrin and Chandler P. Ward for Respondents.

THOMAS, J.—The facts upon which this appeal is based are stated in our former opinion herein. The conclusions there reached as to items one and three of the policy in question are not questioned on this rehearing. We therefore adopt that opinion in part as follows:

"This is an action to recover on a fire insurance policy. Plaintiff Lauman was at all times referred to in this action engaged in the cleaning and dyeing business in the city of Los Angeles. His 'customers' were the owners of 'routes,' having their own wagons, etc., with which they solicited the patronage of their own patrons throughout various parts of the city. The articles so gathered such 'customers' would take to Lauman's place of business for cleaning or dyeing, after which they would, by the latter's 'customers,' be delivered to their own patrons, the owners thereof. In other words, Lauman had no dealings with the individual owners of the clothing and other articles so delivered to him for cleaning or dyeing; all his business was with the owners of the various 'routes.' The court found in favor of plaintiff, and judgment was entered accordingly.

"The policy upon which the action is based was issued to plaintiff by the defendant corporation through one C. P. Spinning, its duly and legally authorized agent. The policy covered three separate items, as follows: (1) 'One thousand dollars on office and other furniture and fixtures, machinery and equipment'; (2) 'one thousand dollars on merchandise of every description, specifically including property left with plaintiff in trust or for repairs, or storage, or for which he should have assumed liability'; and (3) 'five hundred dollars on one-story brick building, where the business was located, and as described in the policy of insurance.' As to the last item, there is attached to the policy a 'mort-

gage clause,' making the loss, if any, payable to the plaintiff H. R. Dodd.

"The policy was issued on May 16, 1917. On the 5th of June following, the property was damaged by fire. Thereafter, and within the time and in the manner required by such policy, Lauman notified the defendant company of the fire, and furnished and submitted to defendant company proof of loss in writing, later, at the request of defendant, submitting amendments thereto. In addition to this, and as late as September, 1917, in response to defendant's demand, Lauman personally submitted to an examination under oath, in compliance with the terms of the policy.

"Under date of July 11, 1917, the defendant corporation, through its special agent and adjuster, R. L. McCulloch, wrote Lauman a letter, which, omitting the formal parts, is in words and figures as follows: 'I am in receipt of a preliminary proof of loss under policy No. 30804 of the Concordia Fire Insurance Company of Milwaukee, Wisconsin, wherein you claim loss and damage by reason of a fire that occurred on the 5th day of June, 1917, at the premises No. 2190 East Eleventh Street, Los Angeles, California. The Concordia Fire Insurance Company herewith disagrees with you as to the amount of loss claimed by you by reason of said fire under its policy No. 30804. The aforesaid Concordia Fire Insurance Company admits that the loss to the various articles covered under the first item of the form as attached to the policy is as set forth in the aforesaid Proof of Loss; and also that the loss to the building covered under the third item of the form as attached to the policy is as set forth in the aforesaid Proof of Loss. The aforesaid Concordia Fire Insurance Company disagrees with you as to the amount of the loss and damage claimed by you on any and all articles covered under the second item of the form as attached to the policy and described as 'merchandise,' and does not admit that you sustained any loss or damage under this item by reason of said fire, as you have failed to show that the goods destroyed or damaged were your property or that you were liable by law for any loss or damage to said goods, or that at any time prior to the date of the fire you had specifically assumed liability therefor, nor do you furnish any evidence as to your liability to others

in event said goods were held by you in trust at the time of the fire.'

"Accompanying the proof of loss filed by Lauman and constituting a part thereof, relating to *item two,* was a schedule of garments lost, together with the owners' names and the amounts claimed by each. We do not consider it necessary to set out this schedule here. Further reference thereto will be made when we come to consider appellant's second point.

"It appears that this class of insurance is exceedingly hazardous, and for that reason plaintiff had experienced considerable trouble in keeping his property insured, having had several policies issued to him by Horton & Son, an insurance firm with offices in Pasadena, as agent of various insurance companies. In our opinion no other reference to these 'other' policies is necessary.

"The policy under consideration contained the following provision: 'This policy may be canceled at any time, without tender of unearned portion of premium, by the company by giving five (5) days' written notice of cancellation *to the insured and to any mortgagee or other party to whom, with the written consent of the company, this policy is made payable,* in which case the company shall, upon surrender of the policy or relinquishment of liability thereunder, refund the excess of paid premium above the *pro rata* premium for the expired term.' (Italics ours.) On June 1, 1917, Horton & Son—not Spinning, the issuing agent— wrote Lauman as follows: 'Kindly return us Security policy No. 2064319 and the Concordia policy No. 30804, because both of these companies have ordered their policies canceled. Kindly give this matter prompt attention, as we wish to return these two policies back to the companies at once. . . . In our letter of the 29th we mentioned the National as one of the companies which had canceled off, but this was an error. We should have stated the Security and the Concordia.' This letter was mailed in Pasadena at 6:30 P. M., June 1, 1917, and delivered to Lauman the next day. As we have already seen, the fire occurred on June 5, 1917.

"On this appeal appellant contends: (1) That at the time of the fire the policy here involved had been canceled; and (2) that there was no proof of value as to the articles

embraced in item two covered by the policy. To support the first contention, appellant argues that the firm of Horton & Son was the agent of plaintiff Lauman 'with power to receive notice of cancellation.' If this be so, and such purported notice of cancellation was given within time, then on this phase of the case our decision must be for appellant. The question, therefore, resolves itself into two divisions: (1) Was Horton & Son the agent of plaintiff Lauman with power to receive notice of cancellation and to cancel the policy which is the basis of this suit; and (2) if so, was the purported notice given in time?

"It will be borne in mind that the agent issuing this particular policy of insurance was not Horton & Son, but C. P. Spinning. The record here shows that under date of May 25, 1917, a special agent of the defendant company— R. L. McCulloch—wrote to Spinning as follows: 'Kindly cancel Concordia Policy No. 30804, Roy A. Lauman, assured, covering on cleaning and dyeing establishment at No. 2190 East 11th Street, Los Angeles, California, and relieve the company of all liability thereunder within the time specified in the policy contract. I have already declined this risk four different times, and in order not to do the assured or your office an injustice I have made a re-inspection to-day and find no change. I am sorry to disturb this line, and trust that it will cause you no inconvenience.' Upon receiving this letter Spinning showed it to Mr. A. T. Horton, of the firm of Horton & Son. Thereupon Horton stamped across the page of the 'daily' containing entries with respect to the policy in question, the word 'canceled.' The 'daily' referred to in this case is an abbreviation of the phrase 'Daily Report,' as used in the parlance of insurance agents. The 'Daily Report' is a blank upon which the transactions, if any, that may have been had in connection with a given policy are entered. When a policy is written it is usually delivered to the assured, and a record thereof, together with all 'riders' attached thereto, is kept by the agent in a book known as the 'policy register.' The 'Daily Report' is a record of the same transaction, and theoretically, at least, is supposed to be mailed on the same day to the home office of the company. Such 'daily' contains the report of that day for the one policy only, as issued, modified, or canceled, as the case may be. The

'daily' in the transaction in question was not that of any company for which Horton's firm was acting as agent. Under these circumstances, by what authority did Horton perform this act? Other than the showing of the letter of May 25, 1917, to Horton, nothing was done by Spinning to bring notice of the cancellation of said policy to the plaintiff Lauman. The letter of June 1, 1917, was written and mailed by Horton & Son to, and received by, Lauman, as hereinbefore set forth. If we thought that Horton & Son had authority to receive notice of cancellation, and to cancel the policy, then we doubtless should hold that the letter of the special agent to Spinning, of date of May 25, 1917, and by Spinning shown to Horton, was a sufficient notice of cancellation, regardless of Horton & Son's letter of June 1, 1917, to plaintiff, just referred to.

"Appellant attempted to prove by the witness Spinning that at the time Horton placed the word 'canceled' on the 'daily,' that he, Spinning, 'believed that Horton, or Horton & Son, had the right to receive notices of cancellation,' by asking him if 'he thought and was of the opinion or belief that Horton & Son had the right to cancel the policy of insurance,' and also if he 'believed that Horton & Son, or the Mr. Horton that put that cancellation there, had authority to cancel that policy'; to all of which questions objections were interposed and by the court sustained. Error is predicated upon each of such rulings.

[1] "The record shows that Spinning was employed as a bookkeeper by Horton & Son, and that he was conversant with the practice and custom of the firm in the matter of the cancellation of insurance policies—which was, that *in every case* the assured was given notice of cancellation. Indeed, Mr. Horton himself corroborated Spinning in this regard, and goes somewhat further when he testifies: 'Our custom was first to protect the assured in some other company, and to notify him by either sending him a new policy or advising him that we could not replace it, and request the return of the other policy; and when the other policy came back, *or when the notice was duly given to him of the cancellation, then was the time that we stamped that Canceled.*' (Italics ours.) Horton further testified that he maintained the foregoing practice *in every instance.* Under these circumstances

Horton & Son were mere brokers, and being such were without authority to accept notice of cancellation. (*Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 246, [17 Am. St. Rep. 233, 23 Pac. 869].) This record contains nothing which brings Horton & Son within the purview of section 2300 of the Civil Code. 'The fact that an agent was employed to place insurance does not make him an agent to cancel the policy on behalf of the owner of the property.' (*Cronenwett* v. *Iowa Underwriters etc. Ins. Co.*, 44 Cal. App. 571, [186 Pac. 824].)

"It is contended by appellant that 'the facts proven conclusively show that Horton was the agent of plaintiff for the purpose of obtaining policies of insurance and to receive notices of and agree to cancellation of policies.' But with this we are not able to agree. When the plaintiff Lauman was being cross-examined by defendant's counsel he was asked the following questions and made the following answers: 'Q. Did you tell him [Horton] to what amount to keep the insurance up? A. I asked him to place one thousand dollars in garment insurance. Q. You told him to keep it insured to the extent of two thousand five hundred dollars, didn't you? A. Fifteen hundred dollars on building and equipment and one thousand dollars garment insurance. Q. And you told him to keep you insured to that extent? A. Most assuredly, if he could; they cannot always keep it. They do it to the best of their ability, I presume, but policies are sometimes canceled, and it is hard to place insurance.' Standing alone, this might support the broad assertion of appellant; but viewed in the light of the whole testimony, we do not feel at liberty to disturb the finding of the learned trial court that 'it is not true that on the twenty-fifth day of May, 1917, the defendant duly or regularly, or at all, notified the plaintiffs, or either of them, in writing, or at all, that all liability under said policy of insurance on behalf of the defendant to said plaintiffs would cease and determine within five days after the receipt of such notice,' and 'that it is not true that said, or any such notice, was received by the plaintiffs, or either of them, on May 27, 1917, or at all.'

"The facts in the case of *Ferrar* v. *Western Assur. Co.*, 30 Cal. App. 489, [159 Pac. 609, 611], to which our at-

tention is called, were very different from those in the case at bar, in that in the case cited there was nothing to cause a conflict of ideas or opinion on the question of authority of the insurance agent to keep up the insurance, etc., and the court there found that both the evidence and the 'course of dealing' supported the conclusion there reached. In the instance case the evidence, taken as a whole, amply supports the finding of the trial court, and there is no 'course of dealing' established, except that which is in direct conflict to the position taken by defendant, as we shall presently see.

[2] "Under those conditions we fail to see any basis for the questions objected to. There is absolutely nothing upon which Spinning could base an opinion which would justify a conclusion on his part that Horton, or Horton & Son, had authority to receive notice of cancellation for plaintiff Lauman of any policy, except as provided by the terms of the policy and in accordance with the custom and practice of the office. Indeed, Horton's· act in reference to the policy here involved was a *departure* from that custom; and certainly there is nothing in this record which can be construed as a 'course of dealing' to authorize such. The letter of June 1, 1917, referred to above, we think speaks in stentorian tones in support of plaintiff's contention, and is a witness which, in our opinion, corroborates the evidence. of both Horton and Spinning on this point. Especially does it point to the fact that on that date Horton & Son did not themselves believe that they had any authority to receive notice of cancellation or to cancel the policy, except by following the usual custom of the office and according to the terms of the policy. It must be obvious that had Horton & Son believed that the firm, or any member thereof, possessed such authority, there was no occasion whatever for the writing of that letter.

"Another significant fact in this case is that defendant nowhere in this record makes any attempt to show an express or direct statement or action by plaintiff authorizing Horton, or Horton & Son, to accept notice of or to agree to a cancellation; and as we have already seen, there is a complete absence of any evidence which would authorize the departure from the regular custom and practice of

the office which was proven in this case. We think the court was correct on the rulings in question.

"The record further shows that Spinning, as regards the Concordia agency, was an independent operator, and that the firm of Horton & Son was acting as broker for him. As such brokers, Horton & Son had no authority, as we have seen, to issue or cancel any Concordia policy. Under such conditions, the mere act of placing the impression of a rubber stamp 'Canceled' upon Spinning's 'daily' by Horton, as already referred to, was unavailing. As to both the Concordia company and plaintiff Lauman, Horton, in a legal sense, was a mere meddler or interloper. We have looked in vain for any evidence to prove the authority, ostensible or otherwise, of Horton & Son to receive notice of cancellation or to cancel any policy of insurance, particularly with respect to the policy in question. Admittedly, the only thing Spinning did was to show Horton the letter of May 25, 1917, to which we have already adverted.

"If we assume that Horton & Son was in fact Lauman's agent, then we are confronted with the query: Was this letter which they mailed June 1, 1917, to Lauman, a compliance with the terms of the policy as a notice of cancellation? Manifestly not. [3] As we understand it, the rule is 'that an agency to procure insurance is ended when the policy is procured and delivered to the principal, and the agent has no power after the policy is so delivered to consent to a cancellation, or to accept notice of an intended cancellation by the insurer; and evidence of a usage to give notice to a broker is inadmissible, where the policy requires notice to the insured.' (14 R. C. L., sec. 189; *Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 246, [17 Am. St. Rep. 233, 23 Pac. 869].) For these reasons it follows, we think, that Horton, or Horton & Son were not the agents, or agents with authority, to receive notice of cancellation, and no such notice having ever been given to plaintiff, that the policy was in full force and effect at the time of the fire.

"It further occurs to us that the defense in this action—the claim that the policy was canceled, and hence void at the time of the fire—is clearly the result of an afterthought. In view of the recognition by the special agent of the company of the existence and vitality of the policy

in question, admitting, as he did, the company's liability as to items one and three thereof, we cannot escape this conclusion. Had the company considered the policy canceled, then it doubtless would have taken the position that there was nothing to negotiate, and denied all liability. This it did not do."

[4] Upon a careful reconsideration of respondents' contentions (1) that there is evidence in the record to sustain the finding of the trial court as to item two of the covering clause of the policy, and (2) that the defendant company, by its failure specifically to disagree with the amount claimed by the assured under this item of the policy, is deemed to have assented thereto, we conclude that both should be sustained. Item two of the policy covers loss to the extent of one thousand dollars in merchandise of every description contained in the building, provided the insured shall be liable by law for loss or damage thereto or shall have specifically assumed liability therefor. The court found that, under this item, the plaintiff paid or assumed claims of third persons, to whom he was responsible for goods destroyed by fire, aggregating one thousand dollars, the full amount of the insurance covered by item two. Appellant contends that no proof of the value of the goods lost was submitted, and that, therefore, the finding is not justified by the evidence.

The policy contains the following provision: "Ascertainment of Amount of Loss. This company shall be deemed to have assented to the amount of the loss claimed by the insured in his preliminary proof of loss, unless within twenty days after the receipt thereof, or, if verified amendments have been requested, within twenty days after their receipt, or within twenty days after the receipt of an affidavit that the insured is unable to furnish such amendments, the company shall notify the insured in writing of its partial or total disagreement with the amount of loss claimed by him, and shall also notify the insured in writing of the amount of loss, if any, the company admits on each of the different articles or properties set forth in the preliminary proof or amendments thereto." After receiving the preliminary proof of loss, the adjuster for defendant wrote to Lauman as follows: "The aforesaid Concordia

Fire Insurance Company disagrees with you as to the amount of the loss and damage claimed by you on any and all articles covered under the second item of the form as attached to the policy and described as 'merchandise,' and does not admit that you sustained any loss or damage under this item by reason of said fire, as you have failed to show that the goods destroyed or damaged were your property or that you were liable by law for any loss or damage to said goods, or that at any time prior to the date of the fire you had specifically assumed liability therefor, nor do you furnish any evidence as to your liability to others in event said goods were held by you in trust at the time of the fire.'' Thus, the Insurance Company confined its objection to the payment of loss under this item to the specific reason set forth in the letter, namely, the failure of the insured to show that the goods destroyed or damaged were his property, or that he was liable by law for any loss or damage to the goods, or that he had specifically assumed liability therefor. No objection is made in the letter to the amount of any loss, but it is based solely on the reason stated. Proof was made that the plaintiff had assumed liability for the goods destroyed, and no contention is urged against the sufficiency of the evidence to support the court's finding to that effect. The proof of loss set forth in detail the items paid by plaintiff to third persons; and if the Insurance Company intended to contest the amount of any particular item, it was required, under the terms of the policy, to specify the amount of loss it admitted on such item, otherwise it must be deemed to have assented to the amount of the loss sustained on all items to which no specific objection was made. [5] A general denial of all liability would not meet the requirements of its obligation under the policy to designate the different articles for which it disclaimed liability. (*Victoria Park Co.* v. *Continental Ins. Co.,* 39 Cal. App. 347, [178 Pac. 724].)

Moreover, we believe that the evidence adduced by plaintiffs in support of the proof of loss was sufficient to support the finding. Over two hundred pages of the reporter's transcript are devoted to the testimony of witnesses regarding the amount of their claims for goods destroyed. Re-

ceipts from various parties showing payments aggregating an amount in excess of the policy were introduced in evidence without objection on the part of defendant. The proof of loss set out in detail the several items so paid, and summarized the total loss as follows:

| "Item No. 2. | Cost | Cash Value | Loss |
|---|---|---|---|
| "60 suits of clothes | 1800 | 1200 | 1200" |

The plaintiff Lauman was asked this question: "I will ask you if that information, that data, and those schedules and proofs of loss, were true at the time you furnished them, according to your best knowledge, information and belief?" to which he answered: "At that time they were furnished to the best of my knowledge and belief as correct." While in many instances the witnesses did not testify directly as to the value of the goods, the fact that they had submitted claims for the amount of their losses, and that their receipts had been introduced and received in evidence without objection, and that the witnesses were not cross-examined as to values, taken in conjunction with the proof of loss and the testimony last above quoted, is, we think, sufficient to sustain the finding as to item two of the policy, which is the basis of this litigation.

From the record it appears that considerable time was consumed in the trial of the case. [6] The presumption is that private transactions have been fair and regular. This presumption, if not controverted, is satisfactory. [7] The time to raise the point of the competency of the evidence concerning the item now under consideration, if considered not competent, was during the trial of this case. "The defendant cannot remain silent and take the chance of a favorable issue, and, losing, urge as a ground for reversal an error which, but for his silence, might never have found its way into the case. His failure to object justly gives rise to the inference that at the time he saw no injury being done to him, and he cannot complain on being met here by a barrier arising from his own omission." (*People* v. *Kramer*, 117 Cal. 647, [49 Pac. 842].) This ruling, *a fortiori*, is, we think, especially applicable here.

Judgment affirmed.

Finlayson, P. J., and Weller, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 21, 1921, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 21, 1921.

All the Justices concurred.