[Civ. No. 20641. First Dist., Div. Three. Dec. 20, 1963.]

FINANCIAL INDEMNITY COMPANY, Plaintiff, Cross-defendant and Appellant, v. VERNICE MURPHY et al., Defendants, Cross-complainants and Appellants; FARMERS INSURANCE EXCHANGE et al., Cross-defendants and Respondents.

Bolton, Groff & Dunne, John S. Bolton and Abe Mutchnik for Plaintiff, Cross-defendant and Appellant.

Nagle & Vale, Sandford, Barry, Staiger & Seaver, Warren A. Staiger and Vernon V. Vale for Defendants, Cross-complainants and Appellants.

Schofield & Cunningham, William F. Levins, Richard G. Logan and A. John Merlo for Cross-defendants and Respondents.

DEVINE, J.—The principal question is, which of two insurance companies is liable for damages resulting from a collision of vehicles; and there is a subordinate question of the damages covered. Each of the insurance companies which are parties to the case believes that the party claiming to have been insured, Vernice Murphy, was probably insured, but by the other carrier.

*Facts*

In May 1959, Mrs. Murphy, a resident of Paradise, Butte County, signed an application for a public liability and property damage policy, which contained a $2,000 medical payments indemnity for the insured's family, with Nugent, the local agent of Farmers Insurance Exchange. She testified she knew that Nugent was agent for Farmers and that Farmers was a good company. The agent, Nugent, told her she was covered when she signed, and Farmers admits that she was. The company decided, however, to cancel the insurance on the grounds that the car was exposed to minor drivers, the applicant was divorced (this was inaccurate), had recently come from another state, was but lately employed, did not own her home, and the car was old—the last ground being undoubted, for the car was a 1939 Plymouth. Nugent, to save embarrassment, told Mrs. Murphy only that the cancellation was because the car was so old. Written notice of cancella-

tion, without specification of reason, was received by Mrs. Murphy. Cancellation was to be effective June 10, 1959.

On the day following cancellation, June 11, 1959, Mrs. Murphy bought a 1957 Chevrolet, and she testified that she telephoned Nugent saying she wished the same insurance as she had had on the Plymouth, and collision insurance, too. Nugent left the telephone briefly. He explained the matter to the Farmers district manager, Phillips, in whose office he was at the time. Phillips who was also an agent for Financial Indemnity Company, told Nugent to bind coverage, that if Farmers wouldn't accept, Financial would. Nugent who was the only agent known to Mrs. Murphy, was licensed solely to Farmers. Nugent told Mrs. Murphy that she was covered. Four days later, Mrs. Murphy sent her daughter to Nugent's office with the premium, which was calculated from Farmers' rate schedule, in cash, and Nugent gave her a receipt on a Farmers form. At no time prior to the accident did Mrs. Murphy know of (1) Financial Indemnity Company, (2) Phillips, (3) any difficulty in placing the coverage, (4) any declination of the risk on the Chevrolet by Farmers, (5) any transaction by Nugent with any company other than Farmers.

Following the telephone call of Mrs. Murphy, Nugent had filled out a trial application to Farmers. Farmers rejected this by note to Nugent, but did not send any notice to Mrs. Murphy. There was evidence that Farmers had directed its agents not to cover anyone whose application previously had been denied. Sometime later, and before the accident, Mrs. Murphy met Nugent. The testimony is in conflict, but the court found that he told her she was covered, and said nothing about difficulty in getting coverage.

Shortly after the accident, Mrs. Murphy telephoned a Farmers representative. Soon, Nugent wrote to Mrs. Murphy saying that he had been unable to notify her that her application (by which, he testified, he meant an application to Financial of which she knew nothing) had been returned for lack of information, and enclosing his own check (he had remitted to Financial, which had returned the check to him) for the amount of the premium. It was not cashed.

After Nugent received the notice from Farmers declining coverage on the Chevrolet, he sent an application, not signed by Mrs. Murphy, to Financial Indemnity; it was not on the correct form and another was substituted for it at Financial Indemnity's office, and it bears Mrs. Murphy's name on the signature line, but admittedly, this was not signed by her.

It is not clear who signed it, but probably someone in Financial Indemnity's office did. Financial sent a questionnaire to Nugent, in which it is stated that Financial Indemnity will "hold the coverage bound until 8-1-59 pending receipt of your reply," but returned the premium to Nugent at once. Notice of declination by Financial Indemnity was not sent to Mrs. Murphy (this is the court's finding; the evidence is somewhat conflicting).

On August 10, 1959, the Chevrolet, while driven by Mrs. Murphy's minor daughter, collided with a vehicle of R. E. Rowe. His claim apparently is regarded a good one (his vehicle was struck in the rear) but has not been adjudicated nor paid, and he asks the court to declare one or both carriers responsible for any liability that may be adjudged against Mrs. Murphy.

### Liability of Farmers

The court impliedly held that Farmers was liable on the risk until Financial assumed it, finding that Nugent had actual and apparent authority. On appeal, Farmers agrees that if it ever were liable, liability was terminated, as the court decided; but argues that it never was liable, because Nugent lacked authority. There is substantial evidence that he had actual authority. Nugent had authority generally to bind for 60 days. There was a directive to agents that they did not have authority to cover an insured whose risk had been cancelled, and Nugent knew of this. When the call came from Mrs. Murphy, however, Nugent was in Farmers' district office in Chico, and Phillips, head of the district office, was present and participated, as stated above. It was competent for the court to decide that under these circumstances the directive did not apply.

Ostensible authority can be sustained easily. Nugent had actually bound the company to the Plymouth risk; he had told Mrs. Murphy of no reason for cancellation except the age of that vehicle; he took the premium and gave a Farmers receipt; the company had not communicated directly with Mrs. Murphy to renounce insurability of other vehicles which she might purchase.

Cases are cited by respondent Farmers (*Ingalls* v. *Commercial Insurance Co. of Newark, N. J.* (1962) 18 Wis.2d 233 [118 N.W.2d 178]; *Williams* v. *Republic Insurance Co.* (1955) 286 App.Div. 876 [141 N.Y.S.2d 870]; *Hastalis* v. *Firemen's Ins. Co. of Newark, N. J.* (1936) 117 W.Va. 211 [185 S.E. 419]; *Colonial Assurance Co.* v. *National Fire Ins.*

*Co.* (1903) 110 Ill.App. 471) for the proposition claimed by it that an assured who has knowledge that coverage has been declined may not rely on ostensible authority of the agent to bind what the company has refused. These cases, however, merely hold that an agent's authority to revive a cancelled policy cannot be assumed, particularly where, as in the first two, the agent has told the assured to ignore the company's cancellation notice. In the instant case, there was a new vehicle. The only fault reported to the assured with her prior insurance was the age of the vehicle.

The powers of the agent are, prima facie, coextensive with the business entrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. (1 Cooley, Briefs on Insurance (2d ed.) p. 463; *Frasch* v. *London & Lancashire Fire Ins. Co.,* 213 Cal. 219, 223 [2 P.2d 147]; *Guipre* v. *Kurt Hitke & Co.,* 109 Cal.App.2d 7, 15 [240 P.2d 312].) The court's finding of the agent's authority is well justified.

It is fair to regard the findings and conclusions of law as demonstrating the trial court's deciding that Farmers' coverage was terminated by substitution of coverage by Financial, although there is no explicit finding or conclusion to this effect.

The general rule is that an agent for a company may not, without the knowledge and consent of the insured, cancel one policy at the request of a carrier and substitute another. (*Quong Tue Sing* v. *Anglo-Nevada Assurance Corp.,* 86 Cal. 566 [25 P. 58, 10 L.R.A. 144]; 29 Am.Jur. § 413, p. 760.) The agent to procure insurance is not an agent for cancellation, and notice of cancellation to him is not notice to the insured. (*Emery* v. *Pacific Employers Ins. Co.,* 8 Cal.2d 663, 672 [67 P.2d 1046]; *Lauman* v. *Concordia Fire Ins. Co.,* 50 Cal.App. 609, 618 [195 P. 951].) Thus, unless an exception presently to be discussed applies, Farmers, having been bound to coverage by the apparent authority of Nugent, could not escape liability simply by notifying him, nor by his unauthorized substitution of another carrier.

The exception, or second rule, is this: Where an assured has applied for insurance to an agent having authority to write policies for many companies, has left to the agent the selection of the companies, with instructions to maintain the insurance in an amount stated, and the agent has undertaken so to act, the agent, upon notice from his companies to cancel, has power to waive for the assured the period of

cancellation, to cancel the policies at once, and immediately to write new policies in other companies for the assured, so that the new policies become at once effective. (*Apparel Mfrs. Supply Co.* v. *National Auto. & Cas. Ins. Co.*, 189 Cal.App.2d 443, 460 [11 Cal.Rptr. 380] ; to the same effect, *Lumbermen's Mutual Ins. Co.* v. *Slide Rule & Scale Engineering Co.* (7th Cir.) 177 F.2d 305, 310-311; *Rose Inn Corp.* v. *National Union Fire Ins. Co.*, 258 N.Y. 51 [179 N.E. 256, 83 A.L.R. 293].)

The basis of this proposition is implied agreement of the parties. (*Apparel Mfrs. Supply Co.* v. *National Auto. & Cas. Ins. Co.*, *supra*, at p. 459.) If this consent is lacking, the mere fact that a second coverage is obtained by an unauthorized act does not necessarily terminate the original coverage.

A contract of insurance, including its termination, is governed by the same rules which ordinarily apply to other contracts and the manifest intention of the parties is normally decisive. (*Ohran* v. *National Auto Ins. Co.*, 82 Cal.App.2d 636, 645 [187 P.2d 66].)

In this case, we find none of the indicia of authority of the agent to accept cancellation of the Farmers policy which are present in the cases cited above. Nugent was an agent solely for Farmers when the coverage was placed on June 11, 1959. He had never, of course, substituted policies at will, with the insured's consent, as in the *Apparel Mfrs. Supply Co.* case (p. 461). He had never been told by the insured that all decisions were to be his, as in that case (p. 461). There is not a bit of evidence that Mrs. Murphy knew of the second carrier, by name or by existence. Whether Financial covered the risk, too, is discussed below; but we find nothing which could amount to an authorization by the insured to the Farmers agent to accept cancellation. Farmers was liable on this risk.

### Liability of Financial Indemnity

It does not become a necessary conclusion, from our holding as to Farmers, that Financial is not liable. Financial's contentions on appeal are (1) that there never was liability on its part, because there was no meeting of the minds between Mrs. Murphy and the company; and (2) that if there was coverage, it was terminated before the date of the accident.

As to the first of these contentions, there is much argument in Financial's briefs that the application to Financial was made without the knowledge, intent or consent of Mrs. Murphy, and that the extent of the risk purportedly insured by

Financial varied from that desired by her. At the trial, however, the only witness presented by Financial, its underwriter who had charge of the matter, testified five separate times that Financial was bound for a period, the termination date being given by him as August 1, 1959, in response to some questions, and "through to August 4th" in answer to one question. In addition, Financial, in its pleadings, alleged that it "offered to hold coverage to and until August 1, 1959 under oral binder pending receipt of additional information, which said conditional binder expired on August 1, 1959 without extension or renewal upon default of the said Defendant, VERNICE MURPHY." The trial court took the witness at his word (evidently regarding the "through to August 4th" as including at least August 3rd), and made a finding "That the underwriting agent for Financial Indemnity Company admitted in his testimony and the Court finds the fact to be that Financial Indemnity Company in their underwriting department held coverage bound until 8/3/59 in actual fact." There was no objection to this testimony of the witness, although it was brought out under cross-examination, nor was there motion to strike, on the ground that the questions called for a conclusion of the witness. The proposition of Financial on appeal is one which, from all we can find in the record, contemplates a factual situation the consequences of which are open to controversy and were not presented at the trial; and the opposing parties should not be required to defend against this proposition on appeal. (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 341 [303 P.2d 738].) In this case, it would be particularly unfair to allow the change of position because, had the trial court agreed with the arguments now presented by Financial, it might have held Farmers liable because, as stated above, the court's decision in favor of Farmers was based on the theory that new insurance had been substituted; and the parties entitled to protection and payment might have been satisfied long ago.

As to termination of its admitted coverage, Financial concedes, in its reply brief to Farmers' brief, that there was a clear requirement on its part (as well as on the part of Farmers) that "before such a declination of permanent coverage may be deemed effectual, the company must give notice of its intention to the temporary-assured."[1] The court found

---

[1]Probably Financial does not rely on August 1st as an automatic expiration date of coverage, not only because of the admission by the underwriter that coverage extended to August 4th, the date of claimed

that notice of declination was not mailed to Mrs. Murphy. Financial contends that (1) the evidence that such notice was mailed is indisputable, and (2) that mailing was sufficient and receipt by the assured is unnecessary under the holding of *Jensen* v. *Traders & General Ins. Co.*, 52 Cal.2d 786 [345 P.2d 1].

As evidence of mailing, Financial produced a certificate of mailing which recites that a notice of declination of insurance policy (Form UL 1002) was mailed to Mrs. Murphy at 5735 Reed Lane, Paradise, California, on August 4, 1959, and to Nugent at his address. Financial refers to this as an "affidavit" which would fit the provisions of Insurance Code section 38 that an affidavit of the person mailing any notice required by this code is prima facie evidence that the notice was thus mailed. What was presented was not an affidavit. There is no specification of just what is contained in Form UL 1002,[2] nor was this form identified at the trial. If we were to take the conclusion of the person who mailed it that it was a declination of insurance, we would not know the terms or the effective date.

Moreover, even if we were to regard the certificate as being the equivalent of an affidavit, it would be prima facie evidence only. Nugent, Financial's agent at the time, testified variously that he did not receive the notice (at deposition), and (at trial) that he did receive it, that he was reasonably certain that he did not, and that it was possible he did. The trial court may have accepted the testimony that the witness did not receive the notice, and on appeal the portion of the testimony which supports the judgment must be accepted. (*Industrial Indemnity Co.* v. *Industrial Acc. Com.*, 115 Cal. App.2d 684, 692 [252 P.2d 649].)

Mrs. Murphy's daughter Wanda testified that when she paid the premium to Nugent, on June 15, she told him she would be at the address on Reed Street for about two weeks, but after that, would be at an address in San Francisco, and that Nugent wrote down the latter address. Nugent testified

---

mailing of notice of declination, but also because the binder giving the date of August 1, 1959, declined coverage if a certain answer to an inquiry were not received by that date. Nugent, who was by that time, and since July 20, 1959, had been, an agent for Financial, had knowledge of the required information and did not answer the underwriting inquiry; and the court so found.

[2]Blank forms of declination were put in evidence as specimens. They are not shown to be Form UL 1002. The effective date of declination is blank. They bear no name of a signer.

that he did not remember this, but the court surely did not have to rely on his state of recollection. He placed on the application (the one to which someone at Financial affixed Mrs. Murphy's signature), the Reed Street address only. Mrs. Murphy testified she received no notice.

From all of this, the court was justified in finding that Financial had not notified the assured of declination of coverage. The *Jensen* case, *supra,* is not helpful to Financial, because it holds only that a cancellation clause in an automobile policy, making mere mailing of a cancellation notice to the address given in the policy effective, is not against public policy. There was no policy in our case from which the assured might read such provision and learn which address was the designated one.[3]

### Medical Coverage

In holding that Financial is liable, the court held that medical pay coverage was not included. Since the liability of Financial was established in large part by the admission of its own underwriter, the court was justified in holding the liability to that described in the application which had been signed by one of its agents or employees, and this did not include medical payments. As to Farmers, however, the situation is different. Now that Farmers is held liable, it may be that the court will find that, in the coverage created by the conversations between Nugent and Mrs. Murphy, medical payments were covered in the Chevrolet insurance as they had been in the Plymouth coverage. This is a matter for the trial court to decide, either with or without taking of further evidence.

### Damages for Loss of Ownership and Driving Privileges

Mrs. Murphy contends that she is entitled to damages because the companies refused to post security demanded by the Department of Motor Vehicles, under the Financial Responsibility Laws, in amount $2,430, and she has been unable, having been suspended for failure to secure, to own a motor vehicle for a long period. The court held that although demand was made, and suspension occurred, Mrs. Murphy is not entitled to damages for failure of Financial, the carrier held liable by the trial court, to post security. It is not neces-

---

[3]If a policy had been issued, Insurance Code section 651, requiring 10-day notice of cancellation of auto liability policies, would apply; and Financial gave no proof of such notice. Assured claims this was required even with temporary coverage, but we need not decide this.

sary to decide whether this breach would, in certain cases, produce liability for damages resulting from the suspension (no authorities were cited on either side), because there was an insufficient proof of damages. The vehicle was sold, after the wreck, at a loss of $1,000, for which judgment was awarded against Financial under collision coverage. There is no compelling evidence that Mrs. Murphy could or would have bought another vehicle had her demands against the carrier been met.

It is claimed that her daughter Wanda, who was driving the car at the time of the accident, was wrongfully deprived of the right to a driver's license, because of the refusal of the carriers to post security. The record does not show clearly whether or not Wanda had a valid learner's permit at the time of the accident; but even if she did, no proof of damages was made. To have a driver's license may be a valuable right; but no proof was offered that Wanda Murphy, a minor who had driven into a serious accident, and her mother, would have pursued the matter of licensing.

### Attorney's Fees

Mrs. Murphy, as appellant, contends that in addition to the counsel fees which were awarded against Financial for defense of the collateral actions, she should have been awarded counsel fees in this declaratory relief action. She concedes that it has been held that attorney's fees are not recoverable in a declaratory relief action to establish coverage. (*O'Morrow* v. *Borad,* 27 Cal.2d 794 [167 P.2d 483, 163 A.L.R. 894] ; *Spiva* v. *Phoenix Indemnity Co.,* 167 Cal.App. 2d 496 [334 P.2d 614] ; *Ritchie* v. *Anchor Casualty Co.,* 135 Cal.App.2d 245 [286 P.2d 1000].) Appellant Murphy argues that the rule should not apply when an insurance company, found to be the insurer in the declaratory relief action, has commenced that action and sued a person found to have been its own insured. The holding of the cases cited above was based on the rule that in the absence of contract or statutory provision or recognized exception, the services of an attorney must be paid by the client who employs him. This rule is applicable here.

Judgment against Financial Indemnity Company is modified to prorated amount with Farmers Insurance Exchange, except as to medical payments coverage, as to which judgment in favor of Financial Indemnity Company is affirmed. Judgment in favor of Farmers Insurance Exchange is reversed, with directions to the trial court to enter prorated

judgments against Farmers Insurance Exchange and Financial Indemnity Company, except as to medical coverage, the trial court to decide if medical coverage is included in insurance by Farmers Insurance Exchange. Murphy and Rowe to recover their costs on appeal against both insurance companies.

Judgment for respondent Nugent affirmed; Nugent to bear own costs on appeal.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied January 15, 1964.