[Civ. No. 44424. Second Dist., Div. Five. Aug. 5, 1975.]

JOHN DOUGLAS, Plaintiff and Appellant, v.
LOS ANGELES HERALD-EXAMINER, Defendant and Respondent.

451

COUNSEL

MacDonald, Halsted & Laybourne, Mitchell L. Lathrop, Michael J. Dennis and Eugene R.Erbstoesser for Plaintiff and Appellant.

Flint & MacKay, Philip M. Battaglia, George C. Huddleston and Richard I. Gilchrist for Defendant and Respondent.

OPINION

**LORING, J.***—John Douglas (Douglas) filed a second amended complaint against Los Angeles Herald-Examiner, Division of the Hearst Corporation[1] (Herald) for indemnity and money damages seeking to recover attorney's fees and costs [under the provisions of Labor Code section 2802][2] incurred by him in defense of an action filed against him in the United States District Court, Central Division, entitled Leonard L. Bursten (Bursten) v. Allan Dorfman (Dorfman), *et al.,* No. 70-2501-EC which Douglas alleged was filed against him solely because of services rendered by him as a newspaper reporter in the course and scope of his employment as a reporter for Herald. He alleged that he tendered the defense of such action to Herald, but Herald refused to accept it, and that he employed his own counsel and incurred costs. It was stipulated that the correct sum of attorney's fees and costs was $3,102.30. He also sought damages because he was required to file the instant action. It was stipulated that costs incurred in the instant action [not counting appellate costs] were $5,239.20. He also sought damages for emotional distress in the sum of $85,000 and punitive damages in the sum of $500,000. Herald answered, and after a nonjury trial, the court rendered a written decision, made certain findings (discussed in detail *infra*) and rendered judgment in Herald's favor. Douglas appeals from the judgment.

---

*Assigned by the Chairman of the Judicial Council.

[1]We substitute the name under which defendant answered.

[2]The complaint did not specify any statutory basis, but the briefs in the trial and this court demonstrate that his primary reliance is on that code section. However, see discussion regarding Corporations Code section 830. *infra,* page 465.

## CONTENTIONS

Appellant contends:

I. Labor Code section 2802 requires that an employer indemnify his employee for all that the employee expends or loses as a result of the discharge of his duties as an employee.

II. Included within the word "all" in Labor Code section 2802 are costs of defense and attorney fees incurred by the employee in defending an action brought against him by a third party.

III. Likewise included within the word "all" in Labor Code section 2802 are costs and attorney fees incurred by an employee in an action brought by the employee to enforce the rights granted him under section 2802.

IV. Douglas is entitled to full indemnification for all costs and fees incurred in both the Bursten lawsuit and the instant action.

V. The conduct of the Herald in this case justifies the imposition of exemplary damages.

## FACTS

The parties agree (either by stipulation or admissions in the pleadings or briefs) that Douglas was employed by Herald as a newspaper reporter during the period January 19, 1968, to November 20, 1970; that during and within the scope of his employment he was assigned to and did investigate and report on certain alleged irregularities and possible unlawful activity of an entity known as Beverly Ridge Estates Corporation (BREC), a real estate developer; Douglas obtained material and wrote a series of articles which were submitted to and approved by his appropriate superiors at Herald and its legal advisors; that Herald published such articles with notice of copyright in its newspaper.

The parties stipulated that the trial court should take judicial notice of the file in the Bursten case. Bursten's complaint alleged that he was vice president of BREC; that during the month of January 1969, certain named representatives of the office of the California Attorney General (including Thomas E. Lynch, Attorney General) and certain named representatives of the United States Department of Justice (including the

United States Attorney Robert Meyer) agreed to form a joint task force to investigate Bursten's private and business affairs and the affairs of BREC in order to obtain documents which were beyond the subpoena power of the State of California through the use of a special United States Grand Jury; that documents were obtained and turned over illegally to unauthorized persons including Douglas, which Douglas included in articles written by him published in the Herald-Examiner, all of which was in violation of the civil rights, right of privacy and constitutional rights of Bursten; that the information obtained was maliciously and deliberately given and disseminated to the news media including Douglas; that the information thus supplied to Douglas "was conveyed pursuant to an express agreement between Defendants DORFMAN [operating head of the Teamsters Pension Fund from which BREC had borrowed money] and DOUGLAS whereby said material would be forwarded to Defendants DE FEO [Assistant U.S. attorney], LYNCH [Attorney General of California], HUFFMAN [deputy attorney general of California] and KAUFMAN [supervising auditor for the California Attorney General] for use in furtherance of the conspiracy to violate Plaintiff's [Bursten's] Constitutional rights."

The parties stipulated that Douglas, without the payment of any money or other consideration procured from Bursten a release with prejudice and a dismissal of the Bursten action, except that Douglas agreed to give a deposition for Bursten and waive the newspaperman's privilege of confidential communications.

At trial of the instant case Douglas relied upon the matters admitted by Herald's answer and its answers to interrogatories No. 3, 5 and 7 as follows:

"Interrogatory No. 3: 'During his investigation of and authorship of articles about Beverly Ridge Estates Corporation, its officers and directors, do you contend that plaintiff, JOHN DOUGLAS, committed any act or acts which were outside the course and scope of his employment by the LOS ANGELES HERALD EXAMINER?

" 'Answer: No.' "

". . . Interrogatory No. 5: " . . .

'During his investigation of and authorship of articles about Beverly Ridge Estates Corporation, its officers and directors, do you contend that

plaintiff, JOHN DOUGLAS, failed to commit any act or acts required to him in the course and scope of his employment by LOS ANGELES HERALD EXAMINER?

" 'Answer: No.' "

". . . Interrogatory No. 7: 'Do you contend that plaintiff, JOHN DOUGLAS, was guilty of any wrongdoing whatsoever in connection with his investigation of or his authorship of articles about Beverly Ridge Estates Corporation, its officers or directors?

" 'Answer: No.' "

Douglas did not testify.

As noted, the amount of damages was stipulated to.

The parties stipulated that Mr. Caton (Douglas' supervisor at Herald) would testify that if Douglas "committed any of the acts alleged in the Federal Court, they were not within the course and scope of his employment with the Herald Examiner." The parties also stipulated that "There was a full release executed by Mr. Bursten in favor of Mr. Douglas" which was "with prejudice" without any monetary consideration except an agreement to give his deposition. ·

The trial court found, inter alia, in findings No. 10 and 11:[3]

"10. None of the acts *alleged* to have been committed by DOUGLAS in the Complaint in *Bursten* v. *Dorfman, et al.,* was within the course and scope or in the discharge of the duties of his employment with the HERALD-EXAMINER, and none of the acts *alleged* of DOUGLAS in the Complaint was authorized or directed to be committed by the HERALD-EXAMINER." (Italics ours.)

"11. The HERALD-EXAMINER had no knowledge at any time material hereto of whether or not DOUGLAS actually committed the acts alleged to have been committed by him in the Complaint in *Bursten v. Dorfman, et al.*"

The court made no finding that paragraph XIII of Douglas' complaint was true or untrue. That paragraph read:

---

[3]The findings were written on the legal stationery of the attorneys for Herald.

## "XIII

"Plaintiff BURSTEN in said United States District Court action sued plaintiff herein solely and exclusively because of acts performed for, at the direction of, and with the authorization and approval of defendants herein, which acts of this plaintiff were specifically ratified and approved by defendants, and each of them."

### DISCUSSION

Labor Code section 2802 reads: "An employer shall indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying such directions, believed them to be unlawful."

No California case has been cited, nor has any been found which interprets section 2802 in the factual context here presented. Only two cases discuss the section in any detail. *Earll* v. *McCoy,* 116 Cal.App.2d 44 [253 P.2d 86] is not helpful. However, *Davidson* v. *Welch,* 270 Cal.App.2d 220 at page 227, footnote 3 [75 Cal.Rptr. 676] states: "[3] No opinion is expressed upon the liability of the employer to indemnify the employee for the expense of defending the tort action if the facts were resolved in favor of the employee's contention that he was unwarrantedly attacked and was acting in self-defense. The Restatement of Agency, section 439, subdivision d, page 329, suggests that the employer would be subject to a duty to exonerate the employee."

Section 2802 was enacted in 1937 based upon former Civil Code section 1969 "without substantial change." In the Code Commissioners' notes to the prior section (Civ. Code, § 1969), the commissioners cite a New York case, *Castle* v. *Noyes,* 14 N.Y. 329. In *Castle* v. *Noyes* the plaintiff sued to recover possession of certain oak lumber. Plaintiff derived title under a chattel mortgage which defendant claimed was a fraud on creditors. Plaintiff offered a judgment in a case in which defendant had sued Ronk, plaintiff's employee, in which the mortgage was adjudged valid. The question was whether plaintiff was entitled to the benefits of res judicata, since plaintiffs had appeared in the action and defended Ronk. The New York Court of Appeal held that plaintiffs were entitled to the benefits of the judgment in Ronk's favor since plaintiffs had the right and *duty* to defend Ronk since what he did was

done in the course and scope of his employment by plaintiffs.[4] Another case cited by the Code Commissioners in support of Civil Code section 1969 is *Betts* v. *Gibbins,* 111 Eng.Rep. 22. Plaintiff received 10 casks of acetate of lime from defendant for delivery to Nyren and Wilson. Defendant instructed plaintiff to deliver the casks to other persons. Nyren and Wilson sued plaintiff, who tendered the defense to defendant, who refused to defend. Plaintiff paid out large sums to Nyren and Wilson and sued defendant in assumpsit for indemnity. The King's bench, in an unanimous opinion, awarded judgment for plaintiff. It was stated to be the law:

---

[4]In *Castle* v. *Noyes,* the court said at pages 332, 333 and 334: ". . . In taking the lumber Ronk acted as their servant or agent, and when sued they appeared and defended him under their title. If the judgment had been against Ronk, instead of in his favor, I have no doubt it would prove equally an estoppel against them as it is now in their favor. The case would doubtless have been different, if the plaintiffs had not, in fact, defended their servant, Ronk, in that action.

"In order to the estoppel it is not necessary that the parties on the record in both suits should be the same. An estoppel by judgment includes all parties who have a right to appear and control the action and to appeal from the judgment, although not a party to the record. (1 *Greenl. Ev.,* § 523; 5 *Denio,* 517.) The plaintiffs had this right when called upon by their servant Ronk in the suit against him. It might more properly, perhaps, be said, that it was their duty to appear and assume his defence [*sic*], grounded upon an implied obligation to save him harmless in the commission of the trespass which the plaintiff in that action alleged against him. This implied obligation, growing out of the relation of master and servant, is, I conceive, the ground of the estoppel of the judgment in actions of this nature. There is no objection to the implications of such obligation on the assumption that the act of Ronk, in taking the lumber, was a trespass. It is admitted that there can be no contribution between joint trespassers, nor will the law sustain an express promise to indemnify against the consequences of a willful wrong. But it has been repeatedly held within the law of agency that a promise to indemnify is binding when the agent acts within the legitimate scope of his agency and in good faith. (19 *John.,* 142; 9 *Cow.* 154; *Story on Agency,* § 339; 14 *Pick.* 174; 4 *Bing.* 66; *Smith's Mer. Law,* 109.) Upon the same principle, I think the law will imply an indemnity where the agent acts in good faith, in obedience to the express direction of his principal, although, at the same time, he is committing an unconscious wrong or trespass against the property of another. This is in analogy to the implied liability of a principal to reimburse his agent for moneys paid out in the course of his agency business (*Ramsay* v. *Gardner,* 11 *Johns.* 439); and to the case cited by Justice Story, in his work on Agency, section 339: 'If an agent, in consequence of a deception practiced upon him by his principal, and in pursuance of orders, innocently makes a false representation of the quality of the goods of his principal, and he is compelled to pay damages to the purchaser on account thereof, he will be entitled to full remuneration from his principal.' Another case is cited by the same learned author, in illustration of the general rule, and quite apposite to the question under consideration: 'If an agent has innocently, and without any notice of an adverse title, converted the property of a third person under the direction or authority of his principal claiming it as owner, and a recovery is subsequently had against him therefor by such third person, he will be entitled to reimbursement from his principal' (*citing Paley on Agency, by Lloyd,* 152, 301; 4 *Bing.* 66; 2 *Johns. Cases,* 54; 17 *Johns.,* 142; 14 *Pick.,* 174). The same author further remarks that in all this class of cases, when an agent acts *bona fide,* the law will imply a promise to indemnify as against the principal.

". . . In *Adamson* v. *Jarvis* (4 Bing. 66), we have the observations of a learned person, familiar with commercial law. He says (4 Bing. 72), 'Auctioners, brokers, factors, and agents, do not take regular indemnities. These would be indeed surprised, if, having sold goods for a man and paid him the proceeds, and having suffered afterwards in an action at the suit of the true owners, they were to find themselves wrongdoers, and could not recover compensation from him who had induced them to do the wrong.' *Fletcher* v. *Harcot (d)* shews [*sic*] that there may be an indemnity between wrongdoers, unless it appears that they have been jointly concerned in doing what the party complaining knew to be illegal. The act there done was a very strong one; yet, though it turned out to be entirely wrong, the indemnity was allowed. Now, whether the promise there was express or implied, it would have equally been void if against public policy. That case seems to me to go to this full extent; that where one party induces another to do an act which is not legally supportable, and yet is not clearly in itself a breach of law, the party so inducing shall be answerable to the other for the consequences."

". . . . . . . . . . . . . . . . . . ."

". . . The defendant requests the plaintiffs to do an act which is at the time equivocal, as we may fairly infer from the arguments we have heard on the subject; at any rate, it was so far doubtful, that it could not be notoriously illegal. Then the defendant gives a written order, changing the destination of the goods, which are thereupon delivered in pursuance of that order. Here there is nothing clearly illegal; the plaintiffs acted in obedience to the defendant's orders, as it was perfectly open to them to do; and the defendant is therefore liable for the consequences of those orders." (*Betts* v. *Gibbins, supra,* at pp. 29, 30.)

The Restatement Second of the Law of Agency, section 439 (referred to in *Davidson* v. *Welch, supra*) provides:

"§ 439. When Duty of Indemnity Exists

---

The same doctrine is stated by Smith, in his treatise on Mercantile Law (2 *Law Lib.* 88, *4th series*), citing *Betts* v. *Gibbons* [*sic*], 2 Ad. & Ell. 57.

"Within the principle of law above stated, and to which I fully assent, the law would imply a promise on the part of the plaintiffs in this action to indemnify their agent Ronk against the consequences of the imputed trespass in taking the lumber out of the hands of the defendant. It was, therefore, both the duty and the right of the plaintiffs to appear and defend Ronk in the action against him for the alleged trespass. In so doing, they were substantially defending their own act, and in this sense should be regarded as substantially parties to the action, in the place of Ronk. They have, therefore, the same right to use the judgment as an estoppel against the adverse party that Ronk would have. . . ."

"Unless otherwise agreed, a principal is subject to a duty to exonerate an agent who is not barred by the illegality of his conduct to indemnify him for:

"  .   .   .   .   .   .   .   .   .   ..   .   .   .   .   .   .   .   .   .   .

"(d) expenses of defending actions by third persons brought because of the agent's authorized conduct, such actions being unfounded but not brought in bad faith; . . .

"Comment:

"a. This Section states the situations in which the courts are agreed that the principal's duty of indemnity exists. There are other situations in which there are no decisions or in which it is not clear whether or not such a duty exists. Thus, it can not be stated whether the principal has a duty to indemnify an agent for the expenses of defending unfounded suits brought in bad faith by third persons for alleged torts or breaches of contract by the agent in the performance of his duties, or to indemnify him for payments made by him out of his own funds which he is forced to make as a result of arbitrary exactions in the form of legal proceedings, brought against him by third persons on account of authorized transactions conducted by him or for the expenses of defending unsuccessful criminal prosecutions based on authorized acts."

In the "Comment on Clause (d)" at page 333 the Restatement states:

"h. An agent who has done an authorized act which brings him into contact with others, such as the making of a contract or the taking possession of a chattel, is ordinarily entitled to indemnity for the expenses of a successful defense to actions brought by third persons acting under the mistaken belief that the agent's conduct was a breach of contract, a tort, or otherwise created liability to them. If the action is the result of a reasonable mistake of law or fact by the third person, it is within the risks attendant upon authorizing the conduct and one which the principal customarily assumes. . . ."

In the appendix at page 685, the following comment on clause (d) is made:

"*Comment d.* Indemnity for the expense of defending actions brought against an agent because of a transaction entered into on account of the

principal is granted as a matter of course where a judgment is obtained against the agent, if the principal has been notified. See § 338, Comment e. The same rule should apply where suit is brought and successfully defended. This is true whether or not the other party was reasonable in beginning the proceeding, but the courts have been reluctant to allow actions in such cases, and hence the Caveat. No statement is made as to the corporate directors who have successfully defended actions by minority stockholders, since directors are in a special category. There is, however, no reason why they should not be indemnified and it is suggested that the adverse decisions were made at a time when the principles of indemnity were not well understood.

"In the following cases indemnity was given to a blameless agent who successfully defended an action brought on account of transactions entered into on his principal's account: *Admiral Oriental Line* v. *U. S.,* 86 F.2d 201 (2d Cir. 1936), defense against action for negligence in managing a ship, indemnity to such agent, citing § 439; *Stocking* v. *Sage,* 1 Conn. 518 (1916); *First Nat. Bank* v. *Tenney,* 43 Ill.App. 544 (1892), action against attorney, claimed to have acted improperly in obtaining a judgment; *Herman* v. *Leland,* 84 Misc. 82, 145 N.Y.S. 972 (1914); *Dailey Bros.* v. *W. A. Clements Co.,* 120 Misc. 310, 198 N.Y.S. 387 (1923), action against agent on warranty of authority, based on principal's prior repudiation."

■ We have no doubt that Labor Code section 2802 requires an employer to defend or indemnify an employee who is sued by third persons for conduct in the course and scope of his employment. ■ As noted the parties executed a release with prejudice and a dismissal of the federal action. In our view such documents should be given the same legal effect as a dismissal with prejudice. Federal Rule 41(a) authorizes a stipulation to dismiss with prejudice and we can see no reason why such stipulation may not be embodied in a release which could be filed whenever the need therefor arises. To hold otherwise gives effect to form rather than substance. In either situation the documents constitute a complete bar to the further prosecution of the case against Douglas. Although the Restatement makes a distinction between actions which are "unfounded" and actions which are meritorious, we need not concern ourselves with that distinction here. A dismissal with prejudice operates as a retraxit under federal law (*Glick* v. *Ballentine Produce, Inc.,* 397 F.2d 590, 593; *Hudson Engineering Company* v. *Bingham Pump Company,* 298 F.Supp. 387, 389; *A. B. Dick Co.* v. *Marr,* 197 F.2d 498, 502; *Esquire, Inc.* v. *Varga Enterprises,* 185 F.2d 14, 17) and under California law

(*Kronkright* v. *Gardner,* 31 Cal.App.3d 214, 218, 219 [107 Cal.Rptr. 270]; *Datta* v. *Staab,* 173 Cal.App.2d 613, 621 [343 P.2d 977]; *Robinson* v. *Hiles,* 119 Cal.App.2d 666, 672 [260 P.2d 194]) and therefore compels a conclusion here that Bursten's action was "unfounded." ██ However, we cannot endorse the requirement of the Restatement that the action by the third person (for which the employee is entitled to indemnity) must be one which was "not brought in bad faith" since no such distinction appears in Labor Code section 2802. The employee who is sued for authorized acts in the scope of his employment is as much in need of and deserving of indemnity if the third person acts in bad faith as the employee is if the third person acts in good faith. The needs and rights of the employee should not be measured by the state of mind of the third person plaintiff. If the term "bad faith" is intended to only exclude actions brought as a result of collusion between the third person and the employee, then we have no quarrel with the term.

██ Consequently, we conclude that if Bursten sued Douglas "solely and exclusively because of acts performed for, at the direction of, and with the authorization and approval of [Herald] which acts of [Douglas] were specifically ratified and approved by [Herald]" as alleged in paragraph XIII of the complaint, then Douglas would be entitled to indemnity from Herald for the costs and expenses incurred in defending the case of Bursten v. Douglas.

However, these conclusions do not dispose of this appeal.

In the present posture of this case we do not know whether the allegations of paragraph XIII are true or false. The court made no finding on that issue.

We are required to reverse the judgment here because (1) the court failed to make a finding on a material issue of fact and (2) the findings made do not support the judgment.

██ It is elemental that a court must make a finding on a material issue. In 4 Witkin, California Procedure (2d ed. 1971) section 337, at page 3139 it is stated:

"The right of a party to findings is a right to express findings on all material issues raised by the pleadings or otherwise (see C.C.P. 632, Superior Court Rule 232(e), supra, § 322), and failure to find on a material issue will ordinarily amount to reversible error. . . .

"The failure to find on a material issue is too fundamental a defect to be waived by failure to object or to propose amendments to the findings in the trial court. [Citations.] And the appellate fact-finding power under C.C.P. 909 is seldom a means of saving the judgment, for it will not be exercised where the record shows a substantial conflict in the evidence. . . ."

█ The court should have made a finding regarding the truth or falsity of the matters alleged in paragraph XIII which allegations we regard as the heart of this problem. If the allegations were true Douglas would clearly be entitled to prevail. If the allegations were not true the result would be less clear.

█ Furthermore, in our view the findings, as made, do not support the judgment. One of the key findings is Finding 10, quoted *ante*. That finding merely found that none of the acts which Bursten *"alleged"* that Douglas committed were in the course and scope of his employment. That is not the test. The test is not what the third person *"alleges"* but what were the facts. Bursten's complaint alleged two different types of conduct by Douglas: (1) The receipt of information (We have difficulty concluding that that was not within the course and scope of Douglas' employment; but, on the contrary, the obtaining of information was one of the precise matters for which he was employed), and (2) an express agreement between Douglas and Dorfman that Douglas would transmit "said material" to third persons for use in furtherance of the alleged conspiracy. Apparently the court's finding refers to the latter allegations of the Bursten complaint which alleged that the information was conveyed to Douglas under an express agreement that the material "would be forwarded" to certain named persons. Even that allegation falls short of alleging that Douglas did in fact "forward" the information as allegedly required by the agreement. Nowhere do we find any evidence that Douglas did in fact "forward" any material to any person other than by the writing and publication of the articles which were admittedly within the scope of his employment.

As we indicated, the test of whether or not Douglas is entitled to recover under Labor Code section 2802 is not what Bursten alleged in the federal action, but whether Douglas was required to defend the federal action solely because of acts which he performed within the course and scope of his employment. The court has made no finding on that ultimate issue of fact which is the controlling issue here. This record leaves this court in a quandary as to whether what Douglas did which

caused Bursten to sue him was within or without the scope of his employment. All we are told is that if he did what Bursten alleged that he did, it would have been outside the scope of his employment. We are told that at the time Herald refused the defense of Douglas, Herald had no knowledge that what Douglas in fact did was outside the scope of his employment. But again the test is not what was in the mind of Herald. The proper question is what was the actual fact? If an employer, regardless of his knowledge, elects to run a risk and refuses to defend and indemnify an employee who is sued as a result of acts and conduct within the scope of his employment, then the employer must bear the consequences of Labor Code section 2802 if it is established that the employee was sued as a result of acts and conduct within the scope of his employment.

■ Douglas argues on authority of *Gray* v. *Zurich Ins. Co.*, 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] that Herald had an obligation to defend and indemnify him in the Bursten case in any event. We do not believe that *Gray* supports the position of Douglas that Herald had a duty to defend in any event. In *Gray* the court said at page 276: "Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy. . . ."

In the case at bar we cannot hold as a matter of law that Herald knew that there was a "potential for liability" within the course and scope of Douglas' employment. The trial court made no such finding. In the case at bar the right of recovery is derived from a statute rather than an insurance policy. Since the statutory right is based upon a state of fact (if he is sued "in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer" etc.) it must logically follow that if the statutorily defined state of facts does not exist then the statutory rights do not arise. Consequently an employer does not have a duty to defend an employee who is sued solely because he was off on a frolic of his own not within the scope of his employment and not in obedience to the directions of his employer. We cannot, therefore, direct the trial court to render judgment in favor of Douglas because the state of fact which entitles him to recover has not yet been judicially determined to exist.

The release with prejudice and dismissal of Douglas from the Bursten action constituted a retraxit under federal law and therefore an admission by Bursten that his charges against Douglas were unfounded. If they were unfounded and no other reason is established for the action, then in our view, a trial court would be justified in concluding that Douglas was sued for conduct within the scope of his employment—the fact that he wrote and Herald published the critical articles.

■  In our view when an employer refuses to defend an employee in an action which may or may not be unfounded for conduct which may or may not have been within the course and scope of his employment and it is ultimately established that the action was unfounded and the employee acted within the course and scope of his employment, then the employer has an obligation under Labor Code section 2802 to indemnify the employee for his attorney's fees and costs in defending the action.

Herald argued in its "Respondent's Brief" that Douglas was not entitled to the benefits of Corporations Code section 830[5] since Douglas

---

[5]Corporations Code section 830 reads:

"(a) When a person is sued, either alone or with others, because he is or was a director, officer, or employee of a corporation, domestic or foreign, in any proceeding arising out of his alleged misfeasance or nonfeasance in the performance of his duties or out of any alleged wrongful act against the corporation or by the corporation, indemnity for his reasonable expenses, including attorneys' fees incurred in the defense of the proceeding, may be assessed against the corporation, its receiver, or its trustee, by the court in the same or a separate proceeding, if both of the following conditions exist:

"(1) The person sued is successful in whole or in part, or the proceeding against him is settled with the approval of the court.

"(2) The court finds that his conduct fairly and equitably merits such indemnity.

"The amount of such indemnity shall be so much of the expenses, including attorneys' fees, incurred in the defense of the proceeding, as the court determines and finds to be reasonable.

"(b) Application for such indemnity may be made either by a person sued or by the attorney or other person rendering services to him in connection with the defense, and the court may order fees and expenses to be paid directly to the attorney or other person, although he is not a party to the proceeding.

"(c) Notice of the application for such indemnity shall be served upon the corporation, its receiver, or its trustee, and upon the plaintiff and other parties to the proceeding.

"The court may order notice to be given also to the shareholders in the manner provided in this division for giving notice of shareholders' meetings, in such form as the court directs.

"(d) This section applies to all proceedings specified in subdivision (a), whether brought by the corporation, its receiver, its trustee, one or more of its shareholders or creditors, any governmental body, any public official, or any private person or corporation, domestic or foreign.

"(e) The rights and remedy provided by this section are exclusive. The awarding of indemnity for expenses, including attorneys' fees, to parties to such proceedings, whether

did not rely on that code section in the trial court. Herald also argues that since Corporations Code section 830 expressly and specifically authorizes attorneys fees that the absence of any reference to attorneys fees in section 2802[6] indicates that attorneys fees are not authorized by section 2802. Having thereby alerted Douglas to the existence of Corporations Code section 830, Douglas in his closing brief claims the benefits thereof under authority of *Allstate Ins. Co.* v. *Orlando,* 262 Cal.App.2d 858 [69 Cal.Rptr. 702]; *Ward* v. *Taggart,* 51 Cal.2d 736, 742 [336 P.2d 534] and *Freeman* v. *Affiliated Property Craftsmen,* 266 Cal.App.2d 723, 735 [72 Cal.Rptr. 357], and for good measure Douglas also invokes (in his closing brief) Title 8 Delaware Code Annotated section 145, which imposes on Delaware Corporations a duty toward its employees similar to California Corporations Code section 830. Herald is a Delaware corporation.

Since we have concluded that reversal is required for the reasons already stated, we will not become embroiled in this "back fire" argument other than to point out to the trial court that on remand, it might well consider the applicability of Corporations Code section 830, if the requirements of that section are met. Since California law fully covers the subject matter, it would seem to be unnecessary to resort to Delaware law.

---

terminated by trial on the merits or by settlement or dismissal, shall be made only upon order of court pursuant to this section, and shall not be governed by any provision in the articles or by-laws of the corporation or by resolution or agreement of the corporation, its directors, or its shareholders.

"(f) Notwithstanding the provisions of subdivisions (a), (b), (c), (d) and (e) of this section, the board of directors may authorize a corporation to pay expenses incurred by, or to satisfy a judgment or fine rendered or levied against, a present or former director, officer or employee of the corporation in an action brought by a third party against such person (whether or not the corporation is joined as a party defendant) to impose a liability or penalty on such person for an act alleged to have been committed by such person while a director, officer or employee, or by the corporation, or by both; provided, the board of directors determines in good faith that such director, officer or employee was acting in good faith within what he reasonably believed to be the scope of his employment or authority and for a purpose which he reasonably believed to be in the best interests of the corporation or its shareholders. Payments authorized hereunder include amounts paid and expenses incurred in settling any such action or threatened action. This subdivision (f) does not apply to any action instituted or maintained in the right of the corporation by a shareholder or holder of a voting trust certificate representing shares of the corporation.

"(g) The provisions of this section shall apply to the estate, executor, administrator, heirs, legatees or devisees of a director, officer or employee, and the term 'person' where used in the foregoing subdivisions of this section shall include the estate, executor, administrator, heirs, legatees or devisees of such person."

[6]We do not accept the argument. Section 2802 does not specifically delineate attorneys fees because the word "all" is all inclusive.

Furthermore, since we have concluded that reversal is required, we will express no opinion regarding an award of damages for emotional distress or punitive or exemplary damages. On retrial, the trier of fact will determine as a fact whether or not Herald acted in bad faith or with malice.

■   Lastly, we address ourselves to the claim of Douglas that he is also entitled to attorneys fees and costs in prosecuting the instant action of *Douglas v. Los Angeles Herald-Examiner.* When this issue was first before us, we expressed the opinion that that claim to enforce his right of indemnity arose "in direct consequence of the discharge of his duties as such or of his obedience to the directions of the employer" and that Douglas was therefore as much entitled to attorneys fees and costs in the instant action as he would be in the initial action of Bursten v. Douglas. Since the case has been referred to us by unanimous order of the Supreme Court for further consideration, we have reconsidered this point and have concluded that we were premature in reaching that conclusion.

We recapitulate the arguments of the parties on this point as follows:

Herald-Examiner contends that Douglas is not entitled to recover attorneys fees and costs in the instant action of *Douglas v. Los Angeles Herald-Examiner,* citing such cases as *Lowell v. Maryland Casualty Co.,* 65 Cal.2d 298, 302 [54 Cal.Rptr. 116, 419 P.2d 180]; *Financial Indemnity Co. v. Murphy,* 223 Cal.App.2d 621, 633 [35 Cal.Rptr. 913]; *Spiva v. Phoenix Indemnity Co.,* 167 Cal.App.2d 496, 498 [334 P.2d 614]; *Ritchie v. Anchor Casualty Co.,* 135 Cal.App.2d 245, 259 [286 P.2d 1000], and *O'Morrow v. Borad,* 27 Cal.2d 794 [167 P.2d 483, 163 A.L.R. 894]; see also Code of Civil Procedure section 1021.

Douglass recognizes that in the recent case of *Alyeska Pipeline Co. v. Wilderness Society* (1975) 421 U.S. 240, 247 [44 L.Ed.2d 141, 147, 95 S.Ct. 1612], the court said, "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." This is referred to as the American rule[7] which is in contrast to the English rule[8] which normally allows the prevailing party to recover attorneys fees.

[7]For critical comment on the American Rule, see Ehrenzweig, *Reimbursement of Counsel Fees and the Great Society,* 54 Cal.L.Rev. 792; Kuenzel, *The Attorneys Fee: Why not a cost of Litigation,* 49 Iowa L.Rev. 75; McCormick, *Counsel Fees and other Expenses of Litigation as an Element of Damages,* 15 Minn.L.Rev. 619; Comment, *Court Awarded Attorneys Fees and Equal Access to the Courts,* 122 U.Pa.L.Rev. 636, 648-655.

[8]See *Fleischmann Corp. v. Maier Brewing,* 386 U.S. 714, 717 [18 L.Ed.2d 475, 478, 87 S.Ct. 1404]; Goodhart, *Costs,* 38 Yale L.J. 849.

Douglas argues that there are several exceptions to the American rule which are commonly referred to as the federal equitable rule and are recognized in the following cases: *F. D. Rich Co.* v. *Industrial Lumber Co.,* 417 U.S. 116 [40 L.Ed.2d 703, 94 S.Ct. 2157]; *Vaughan* v. *Atkinson,* 369 U.S. 527 [8 L.Ed.2d 88, 82 S.Ct. 997] (admiralty); *Hall* v. *Cole,* 412 U.S. 1 [36 L.Ed.2d 702, 93 S.Ct. 1943]; *Bell* v. *School Board of Powhatan County, Virginia,* 321 F.2d 494; *Cato* v. *Parham,* 293 F.Supp. 1375 (affd. 403 F.2d 12); *Rolax* v. *Atlantic Coast Line R. Co.,* 186 F.2d 473; *Fairley* v. *Patterson,* 493 F.2d 598; *Basso* v. *Utah Power and Light,* 495 F.2d 906 (defendant guilty of unconscionable conduct in a law action); *Newman* v. *Piggie Park Enterprises,* 390 U.S. 400 [19 L.Ed.2d 1263, 88 S.Ct. 964]; *Gazan* v. *Vadsco,* 6 F.Supp. 568 and *Wolfe* v. *National Lead Company,* 272 F.2d 867. (We note parenthetically that actions for indemnity may come within the scope of equitable powers. 7 Witkin Summary of Cal. Law (8th ed.) Equity, § 122, p. 5341.) Douglas places special emphasis on the case of *Vaughan* .v. *Atkinson,* 369 U.S. 527 [8 L.Ed.2d 88, 82 S.Ct. 997] wherein attorneys fees were allowed to a disabled seaman who was required to sue his employer for violation of the admiralty duty to provide food, lodging and medical expenses to sick seamen. In that case, the court said: "Counsel fees were allowed in *The Apollon,* 9 Wheat. 362, 379, an admiralty suit where one party was put to expense in recovering demurrage of a vessel wrongfully seized. While failure to give maintenance and cure may give rise to a claim for damages for the suffering and for the physical handicap which follows (*The Iroquois,* 194 U. S. 240), the recovery may also include 'necessary expenses.' *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 371.

"In the instant case respondents were callous in their attitude, making no investigation of libellant's claim and by their silence neither admitting nor denying it. As a result of that recalcitrance, libellant was forced to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old. The default was willful and persistent. It is difficult to imagine a clearer case of damages suffered for failure to pay maintenance than this one." (369 U.S. at pp. 530, 531 [8 L.Ed.2d at pp. 91, 92].)

Douglas urges that a court of equity does have power (despite Code Civ. Proc., § 1021) to award reasonable attorneys fees to a successful litigant where there has been "vexatious and oppressive conduct on the part of another party or its counsel" and directs our attention to the case of *D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1 [112 Cal.Rptr.

786, 520 P.2d 10],[9] wherein Douglas claims the court hinted that such power exists and that the opinion indicates that the court is "waiting for the proper case before it would decide to include this federal equitable principle in California law." Assuming, without deciding, that the California Supreme Court may, on a proper day in a proper case, incorporate the federal equitable rule into the law of California, it is clear that it has not yet done so. *D'Amico,* however, is very persuasive for another reason. It points up the proper disposition of this issue in this case: This is not the case, and this is not the day for the adoption of the federal equitable principle because the trial court has not yet made any finding of fact herein which would justify the application of the federal equitable principle, even if it were the law of California. The trial court may or may not make such a finding of fact at some future retrial. We go precisely as far and *not one step further* than the Supreme Court did in *D'Amico.* The question of the applicability of the federal equitable principle regarding attorneys fees is "(a matter which we are not required to, and do not, decide today)."

The judgment is reversed.

Ashby, Acting P. J., and Hastings, J., concurred.

---

[9]In *D'Amico,* the court said: (P. 26): "Plaintiffs take refuge in a series of federal cases which, generally speaking, fall into two groups. The first group involves awards of attorney's fees to the prevailing litigant when his opponent has maintained an unfounded action or defense and has done so 'in bad faith, vexatiously, wantonly or for oppressive reasons.'" For sake of brevity herein, we will refer to this as the federal equitable principle, although technically the principle is much broader in scope. Under the federal cases, *supra,* it may be used in ordinary civil cases where appropriate.