[No. B073845. Second Dist., Div. Five. July 29, 1994.]

LOS ANGELES POLICE PROTECTIVE LEAGUE et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Gregory G. Petersen and Larry J. Roberts for Plaintiffs and Appellants.

James K. Hahn, City Attorney, Frederick N. Merkin and Robert Cramer, Assistant City Attorneys, for Defendant and Respondent.

## OPINION

**GRIGNON, J.**—In this appeal, we consider whether a public entity is required to indemnify public employees for legal fees incurred in successfully defending themselves against criminal prosecutions arising from actions taken within the course and scope of their employment. We conclude that indemnification for such criminal defense costs is discretionary on the part of the public entity rather than mandatory. Accordingly, we affirm the judgment of the trial court in favor of the public entity.

### PROCEDURAL BACKGROUND

On January 29, 1992, plaintiffs and appellants, Police Officers Thomas Elfmont, Charles Spicer, Charles Wilson and Todd Parrick, and their unions, Los Angeles Police Protective League and Los Angeles Police Command Officers Association, filed suit against defendant and respondent City of Los Angeles (City) seeking indemnity for legal fees incurred in their successful defense of criminal charges brought for actions taken within the scope of the officers' employment.[1] Plaintiffs sought indemnity under Labor Code section 2802, which provides employees indemnity for expenditures necessarily incurred in connection with their employment.[2] The City demurred to the complaint. The demurrer was overruled and the City answered. At the trial on October 30, 1992, the parties stipulated that the trial court should decide the case based on the proposed stipulated facts. The trial court took the matter under submission. On December 24, 1992, the trial court issued its memorandum of decision, rendering judgment in favor of the City and against plaintiffs. Judgment was entered on February 17, 1993, in favor of the City. Plaintiffs appeal.[3]

---

[1]The unions paid the officers' criminal defense costs.

[2]Plaintiffs originally sought relief on two grounds. They had also claimed the City was liable for the defense costs as damages proximately caused by the City's failure to properly train and supervise plaintiff officers. The parties agreed to dismiss this cause of action for negligent training and supervision without prejudice, pending final determination of the first cause of action in this court.

[3]Plaintiffs filed their notice of appeal on February 11, 1993, purporting to appeal from the memorandum of decision "and from the resulting formal judgment (if any)." Although premature, we will treat this notice of appeal as filed immediately after entry of judgment. (Cal. Rules of Court, rule 2(c).)

## FACTS

The stipulated facts upon which this case was tried are as follows:[4]

"1. Plaintiffs Thomas Elfmont ('Elfmont'), Charles Spicer ('Spicer'), Charles Wilson ('Wilson'), and Todd Parrick ('Parrick') are each employed as police officers for and by the defendant City of Los Angeles ('City').

"2. On August 1, 1988, plaintiffs Elfmont, Spicer, Wilson, and Parrick participated in the planning and serving of court-authorized search warrants at several locations near the intersection of 39th Street and Dalton Avenue in the City of Los Angeles.

"3. Plaintiffs Elfmont, Spicer, Wilson, and Parrick on August 1, 1988 were planning and serving search warrants as part of their duties and functions as police officers for the City.

"4. The Los Angeles Police Department ('Department') had knowledge of, and gave consent to and acquiescence in, plaintiffs Elfmont, Spicer, Wilson, and Parrick planning and serving search warrants at several locations near the intersection of 39th Street and Dalton Avenue in the City of Los Angeles.

"5. As a result of various claims of improper conduct concerning the serving of search warrants at several locations near the intersection of 39th Street and Dalton Avenue on August 1, 1988, the Department brought administrative misconduct charges against several officers, including the plaintiffs Elfmont, Spicer, Wilson, and Parrick.

"6. Several civilians brought civil damages claims against the City and against certain of its employees, including the plaintiffs Elfmont, Spicer, Wilson, and Parrick, as a result of the service of the above warrants.

"7. The Los Angeles County District Attorney filed criminal charges of vandalism and conspiracy to commit vandalism against the individually-named plaintiffs Elfmont, Spicer, Wilson, and Parrick.

"8. At the time the plaintiffs Elfmont, Spicer, Wilson, and Parrick acted in serving the search warrants on several locations near the intersection of 39th

---

[4]It appears that the trial court mistakenly overlooked the final two stipulated facts in setting forth its decision. It is clear, however, that the trial court did not in any way base its decision on the absence of these facts, and neither party contends the omission was error. Indeed, plaintiffs duplicate this error in their brief. For the sake of completeness, however, we set forth all stipulated facts.

Street and Dalton Avenue in the City of Los Angeles on August 1, 1988, they were in the course and scope of their duties, and were on duty, in uniform, and being paid their regular salary.

"9. Plaintiffs Elfmont, Spicer, Wilson, and Parrick in 1989 made a request of the City for a defense of the criminal charges.

"10. Following a lengthy jury trial, a verdict of not guilty was returned on June 19, 1991 on each of the criminal charges.

"11. The City advised the plaintiffs Elfmont, Spicer, Wilson, and Parrick on July 19, 1991 that the City would not indemnify the plaintiffs for the costs of the plaintiffs' legal defense in the criminal case.

"12. The legal fees incurred by the plaintiffs Elfmont, Spicer, Wilson, and Parrick in the criminal case arose out of the defense of allegedly criminal conduct which had occurred while the plaintiffs were on duty as police officers.

"13. The legal fees and charges in the criminal case were expended as a direct consequence of the filing of the criminal charges.

"14. The plaintiffs Elfmont, Spicer, Wilson, and Parrick did not believe their orders and instructions to plan and serve search warrants to have been unlawful at the time they were given or carried out on August 1, 1988."

DISCUSSION

Plaintiffs contend Labor Code section 2802 entitles them to be indemnified by the City for legal fees incurred in successfully defending themselves against criminal charges arising out of actions taken in the course and scope of their employment with the City. Plaintiffs further contend that the Labor Code provision prevails over an apparently conflicting provision of the California Tort Claims Act, Government Code section 995.8.

I. *Government Code Section 995.8*

Government Code section 995.8 provides in pertinent part:

"A public entity is not required to provide for the defense of a criminal action or proceeding . . . brought against an employee or former employee, but a public entity may provide for the defense of a criminal action or proceeding . . . brought against an employee or former employee if:

"(a) The criminal action or proceeding is brought on account of an act or omission in the scope of his employment as an employee of the public entity; and

"(b) The public entity determines that such defense would be in the best interests of the public entity and that the employee or former employee acted, or failed to act, in good faith, without actual malice and in the apparent interests of the public entity."

This section was enacted in 1963 as part of the California Tort Claims Act. The Tort Claims Act was enacted in order to provide a comprehensive codification of the law of governmental liability and immunity. Government Code section 995.8 is not a solitary statute standing alone, but an important part of an overall statutory scheme governing the relations between public entities and their employees when the employees have been charged with wrongdoing.

In 1957, the California Law Revision Commission was authorized by the Legislature to conduct a study to determine whether the common law doctrine of sovereign immunity should be abolished or revised. (Recommendations Relating to Sovereign Immunity, No. 1, Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 803.) However, before the Law Revision Commission completed its study and issued its recommendations, the California Supreme Court decided *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211, 213 [11 Cal.Rptr. 89, 359 P.2d 457], in which it "discarded as mistaken and unjust" the judicial doctrine of governmental immunity from tort liability. In response to this decision, the Legislature enacted a statute suspending the effect of the Supreme Court decision so as to give the Legislature, and the Law Revision Commission, time to revise the law of sovereign immunity. (Recommendations Relating to Sovereign Immunity, No. 1, Tort Liability of Public Entities and Public Employees, *supra*, at p. 803.)[5] In January 1963, the Law Revision Commission issued its recommendations, which the Legislature relied on in large part in enacting the Tort Claims Act.

The Tort Claims Act provides that in the usual civil case brought against a public employee, a public entity is required to defend the action against its

---

[5]The Legislature was also acting in response to a statement in *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 229 [11 Cal.Rptr. 97, 359 P.2d 465], suggesting that the immunity of a public entity for the discretionary acts of its employees performed within the course and scope of their employment and the immunity of such public employees were not co-extensive. (*Ibid.*)

employee (Gov. Code, § 995).[6] The public entity may provide the defense by its own counsel, by outside counsel or through insurance which includes a duty to defend provision. (*Id.* at § 996.) The public entity is also required to pay any judgment entered against the public employee in favor of the third party plaintiff. (*Id.* at § 825, subd. (a).) However, the public entity is not required to pay the defense costs or the judgment[7] if the act giving rise to the underlying action was not within the course and scope of public employment, nor is the entity required to provide a defense if the employee's act or failure to act was the result of actual fraud, corruption or malice. Government Code former section 2001 required a defense to be provided to an employee sued because "of any action taken or work done by him in his official capacity, in good faith and without malice . . . ." (Stats. 1951, ch. 1087, § 1, p. 2822.) Under this statute, before a public entity was required to provide a defense, the employee had to prove good faith and lack of malice. It was unclear who was required to decide, and by what quantum of proof, that the employee was free from bad faith and malice. (*Tracy* v. *County of Fresno* (1954) 125 Cal.App.2d 52, 56-57 [270 P.2d 57].) In 1961, Government Code former section 2001 was revised. The new statute required the public entity to provide a defense when any claim was brought for acts within the course and scope of employment, but it could later recover the fees paid if "it is established that the public employee acted or failed to act because of bad faith or malice." (Stats. 1961, ch. 1692, § 2, p. 3669.)

In 1963, the Law Revision Commission found both approaches inadequate. (Recommendations Relating to Sovereign Immunity, No. 4, Defense of Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) pp. 1306-1307.) Rather, it recommended that a public entity be required to provide a defense to a civil action against an employee unless the entity determined the act or omission was outside the course and scope of employment or the employee had acted fraudulently, corruptly or maliciously. (*Id.* at p. 1307.) The Legislature adopted these recommendations. (Gov. Code, §§ 995, 995.2.)[8] If a public entity refuses to provide a defense, the employee may either seek to compel provision of a defense by mandamus, or may

[6]Government Code section 995 provides in pertinent part: "Except as otherwise provided in Sections 995.2 and 995.4, upon request of an employee . . . , a public entity shall provide for the defense of any civil action or proceeding brought against him, in his official or individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity."

[7]The duty to pay the judgment is related to the duty to defend. Government Code section 825, subdivision (a) provides that the public entity shall pay the judgment when a timely request for a defense has been made and the employee reasonably cooperated in good faith in the defense.

[8]Government Code section 995.2, subdivision (a) provides in pertinent part: "A public entity may refuse to provide for the defense of a civil action or proceeding brought against an

retain his or her own counsel and subsequently seek reimbursement from the public entity.[9] When an employee seeks reimbursement for defense costs, the employee must prove that the act was within the course and scope of employment; the public entity has the burden of proving actual fraud, corruption or malice. (Gov. Code, § 996.4.) Likewise, the public entity may provide a defense under a reservation of rights, in which case it is only required to pay the judgment if the employee proves the act was within the course and scope of employment, and the public entity fails to prove the conduct was fraudulent, corrupt or malicious.[10] (Gov. Code, §§ 825, subd. (a), 825.2 subd. (b), 825.6, subd. (b).)

In contrast to the provisions relating to the mandated defense of public employees in civil actions, Government Code section 995.8 affirmatively declares that public entities are not required to provide for the defense of criminal actions brought against their employees, but instead permits the entities to provide defenses in certain circumstances.[11]

■ "[W]here . . . a criminal action is involved, the entity is given the right to refuse the employee a defense *arbitrarily*, with only a permissive right to compensate him for his attorney's fees and costs in the instances noted." (*County of Sacramento* v. *Superior Court* (1971) 20 Cal.App.3d 469, 473 [97 Cal.Rptr. 771].)

---

employee . . . if the public entity determines . . . [h]e or she acted or failed to act because of actual fraud, corruption, or actual malice." Additionally, the public entity can refuse to provide a defense if a conflict of interest would be created. (Gov. Code, § 995.2, subd. (c).)

[9]This scheme has been upheld against a constitutional challenge. (*Hall* v. *California Dept. of Corrections* (N.D.Cal. 1993) 835 F.Supp. 522, 529.)

[10]In contrast to the provisions regarding the public entity's right to seek reimbursement of the judgment from the public employee, the public entity has no right to reimbursement of defense costs. (Gov. Code, § 996.) Under prior law, a public entity could recover defense costs paid if it later established the employee acted in bad faith or with malice. This created a potential conflict of interest, for the public entity had a financial interest in a finding the employee acted with bad faith or malice. This conflict is eliminated by the new law. (Recommendations Relating to Sovereign Immunity, No. 4, Defense of Public Employees, *supra*, at p. 1307.)

[11]Part of the justification for the comprehensive provisions relating to the public defense of civil actions is that since the public entities are to be bound by the judgments, "it seems only fair that . . . they should have the right to defend themselves by controlling the litigation." (Recommendations Relating to Sovereign Immunity, No. 1, Tort Liability of Public Entities and Public Employees, *supra*, at p. 819.) This justification does not exist when the underlying litigation is criminal in nature. There, the public entity is given "a limited discretionary authority" to defend criminal actions because "cases occasionally arise where a criminal proceeding is brought against a public employee who was simply carrying out his orders." (Recommendations Relating to Sovereign Immunity, No. 4, Defense of Public Employees, *supra*, at p. 1308.)

In the absence of any other provision of law, it is clear that Government Code section 995.8 justifies the City's refusal to indemnify plaintiffs in this case. Indeed, plaintiffs raise no challenge to the conclusion that, in the absence of any other applicable statute, Government Code section 995.8 presents a complete defense to their claim. Plaintiffs contend, however, that Labor Code section 2802 mandates indemnity and thus overrides Government Code section 995.8.

## II. *Labor Code Section 2802*

Labor Code section 2802, enacted in 1937, provides: "An employer shall indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying such directions, believed them to be unlawful."

 This section has been interpreted to require employers in general to pay defense costs incurred by employees when defending unfounded third party civil actions challenging the employees' conduct within the course and scope of their employment. "[W]hen an employer refuses to defend an employee in an action which may or may not be unfounded for conduct which may or may not have been within the course and scope of his employment and it is ultimately established that the action was unfounded and the employee acted within the course and scope of his employment, then the employer has an obligation under Labor Code section 2802 to indemnify the employee for his attorney's fees and costs in defending the action." (*Douglas* v. *Los Angeles Herald-Examiner* (1975) 50 Cal.App.3d 449, 465 [123 Cal.Rptr. 683].) This right to indemnity encompasses only the right to indemnity for *necessary* expenditures. (*Grissom* v. *Vons Companies, Inc.* (1991) 1 Cal.App.4th 52 [1 Cal.Rptr.2d 808].)

Plaintiffs contend that Labor Code section 2802 also includes the right to employer indemnity for defense costs incurred successfully defending *criminal* actions challenging conduct within the course and scope of employment. There have been no California cases reaching the issue, and it appears to be an open one.[12] (See Rest.2d Agency, § 439, com. a.) It has not been established, therefore, that the right to indemnity under Labor Code section 2802 extends to costs incurred in defending criminal actions.

---

[12]Indeed, plaintiffs rely only on *Plasikowski* v. *Arbus* (1918) 92 Conn. 556 [103 A. 642] for this proposition. Even if this authority were persuasive, it is not relevant to the present issue. The employee therein claimed an implied contractual right to indemnity, not a common law or statutory right.

However, the City has not raised this issue, either in the trial court or on appeal. Although the City brings several other challenges to the applicablity of Labor Code section 2802, which we do not address, the City does not contest its application to criminal actions. Thus, although we believe it to be a questionable proposition, for the purposes of this appeal we assume without deciding that Labor Code section 2802 provides indemnity for the attorney fees and costs necessarily incurred by an employee successfully defending against a criminal charge brought for conduct within the course and scope of employment.

■ Since it was stipulated that the conduct of the plaintiff officers which formed the basis of the criminal prosecution was within the course and scope of their employment and they were eventually acquitted of these charges, plaintiffs contend the officers state a proper claim for reimbursement under Labor Code section 2802. Plaintiffs further contend that since Labor Code section 2802 would provide for mandatory indemnity in this case, and Government Code section 995.8 provides for indemnity only in the City's discretion, there is an irreconcilable conflict between these statutes.[13]

## III. *Statutory Interpretation*

"[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) "The Legislature is presumed to have meant what it said, and the plain meaning of the language will govern the interpretation of the statute." (*In re Khalid H.*(1992) 6 Cal.App.4th 733, 736 [8 Cal.Rptr.2d 414].) However, language of a statute is not to be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend. (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420]; *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].) When two acts governing the same subject matter cannot be reconciled, the later in time will prevail over the earlier. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449]; *Fleming* v. *Kent* (1982) 129 Cal.App.3d 887, 891 [181 Cal.Rptr. 361]; *Palmer* v. *Agee* (1978) 87 Cal.App.3d 377, 383 [150 Cal.Rptr. 841].) Moreover, a particular or specific provision will prevail over

---

[13]*Kantor* v. *Housing Authority* (1992) 8 Cal.App.4th 424 [10 Cal.Rptr.2d 695] did not involve the asserted conflict. In *Kantor*, employees sought indemnity under both Labor Code section 2802 and Government Code section 825. (8 Cal.App.4th at p. 428, fn. 3.) The question presented in *Kantor* was whether the employer's good faith settlement with the third party plaintiff entitled it to relief from the employees' cross-complaint for statutory indemnity. The answer, no, did not depend on the statute under which indemnity was claimed.

one which is more general. (Code Civ. Proc., § 1859; *Fuentes* v. *Workers' Comp. Appeals Bd.*, *supra*, 16 Cal.3d at p. 8; *Fleming* v. *Kent*, *supra*, 129 Cal.App.3d at p. 891.)

Under these principles, it is manifest that Government Code section 995.8 must prevail to the extent necessary over Labor Code section 2802 in cases involving public employees. Government Code section 995.8 is more recent and more particular than Labor Code section 2802. Moreover, the explicit language of Government Code section 995.8, providing that "[a] public entity is not required to provide for the defense of a criminal action or proceeding . . . brought against an employee . . . ," would be undermined by any interpretation which would allow the general provision of Labor Code section 2802 to require the City to pay plaintiff officers' criminal defense costs.

This conclusion is buttressed by the legislative history of Government Code section 995.8. "[A] public employee . . . should have no recourse against the public entity if it declines to furnish him with a defense against a criminal charge or against an administrative proceeding. Since it is necessary to weigh a great many factors to determine whether the public interest would be served by providing a public employee with a defense against a criminal charge or an administrative proceeding, and since these factors will vary in importance from case to case, the [Law Revision] Commission has concluded that the decision whether it is in the public interest to provide the defense in any particular case is best left to the sound discretion of the public entity." (Recommendations Relating to Sovereign Immunity, No. 4, Defense of Public Employees, *supra*, at pp. 1308-1309.) The Legislative Counsel's Digest of Senate Bill No. 45 (1963 Reg. Sess.) is in agreement stating, the bill "[d]escribes certain classes of cases, including . . . criminal actions, in which the public entity is not required to provide a defense but may, in specified circumstances, do so." Allowing Labor Code section 2802 to mandate indemnity for public employees would be in complete derogation of the legislative intent of the more recent statute. Indeed, it would mandate the illogical result that a public entity would be required to pay the costs of defending a criminal prosecution brought by the entity itself. This could not be the result intended by the Legislature. (Cf. *Tenwolde* v. *County of San Diego* (1993) 14 Cal.App.4th 1083, 1092-1093 [17 Cal.Rptr.2d 789].)

IV. *Effect of Government Code Section 996.6*

Government Code section 996.6 provides: "The rights of an employee or former employee under this part are in addition to and not in lieu of any

rights he may have under any contract or under any other enactment[14] providing for his defense."

Plaintiffs contend that, by this provision, the Legislature intended that Government Code section 995.8 provide the public entity the *option* to provide criminal defense costs when it so chooses, but that if another statute, such as Labor Code section 2802, mandates payment of such costs, "then so be it." They contend that Government Code section 995.8 was enacted only to benefit public *employers*, by giving them the authority to provide a defense to criminal actions against their employees, when it is in the interest of the employer. Conversely, plaintiffs argue Government Code section 996.6 was enacted solely to benefit public employees, to preserve any other rights they may be entitled to in addition to those under the Tort Claims Act. This interpretation must be rejected.[15]

Initially, this interpretation makes superfluous the language in Government Code section 995.8, which states a public entity "is not required to provide for the defense of a criminal action . . . ." Were that statute meant solely to permit an employer to indemnify an employee, the section would have merely begun with the language which describes the circumstances under which "a public entity may provide for the defense of a criminal action . . . brought against an employee . . . ." The fact that the statute begins with an affirmative statement that a defense is not required indicates the statute was more than merely a permissive one.

Moreover, plaintiffs' interpretation overlooks the fact that simultaneous to the enactment of these sections of the Tort Claims Act, the Legislature repealed all known statutory provisions relating to public employee indemnity for criminal defense costs and replaced them with references to the indemnity scheme of the Tort Claims Act. The Law Revision Commission understood that, under the former law, public entities did not have the authority to defend criminal actions brought against public employees on account of acts occurring in the course and scope of employment, except

[14]"Enactment" is defined to mean "a constitutional provision, statute, charter provision, ordinance or regulation." (Gov. Code, § 810.6.)

[15]Government Code section 996.6 was recommended by the Law Revision Commission solely because a similar provision was contained in former Government Code section 2001, discussed above. (Recommendations Relating to Sovereign Immunity, No. 4, Defense of Public Employees, *supra*, at p. 1309.) The provision first appeared in the 1961 revision of that statute. (Stats. 1961, ch. 1692, § 2, p. 3669.)

under a handful of statutes relating to particular types of public entities.[16] (Recommendations Relating to Sovereign Immunity, No. 4, Defense of Public Employees, *supra*, at p. 1308.) The Law Revision Commission recommended repealing some of these statutes and amending others to incorporate by reference the defense provisions of the Tort Claims Act.[17] (*Id.* at pp. 1308, fn. 13, 1315, 1320.) The Legislature adopted these recommendations, and repealed and amended the contrary statutes accordingly. (Stats. 1963, ch. 1683, §§ 9, 18-20, pp. 3300, 3304.)

Additionally, Government Code section 996.6 applies not only to the provisions of Government Code section 995.8, but to all the statutes in title 1, division 3.6, part 7 of the Government Code, relating to the defense of public employees. Thus, if plaintiffs' interpretation is accepted as correct, Labor Code section 2802 would also apply to the exclusion of the comprehensive scheme for the public provision of a defense to civil actions discussed above. For example, a public employee who successfully defended a civil suit for actions taken within the course and scope of employment would presumably be entitled to reimbursement of defense costs regardless of whether that employee acted with malice,[18] contrary to the explicit provisions of Government Code section 996.4. This result was clearly never intended by the Legislature.

Finally, rejection of plaintiff's interpretation of Government Code section 996.6 does not render that section meaningless.[19] As plaintiffs themselves recognize, public entities and employees can voluntarily agree to change the

---

[16]These statutes were Government Code former section 61632, relating to Community Services Districts, Water Code former sections 31088, 60201, relating to County Water Districts and Water Replenishment Districts respectively, and former Kings River Conservation District Act former section 15. (Recommendations Relating to Sovereign Immunity, No. 4, Defense of Public Employees, *supra*, at p. 1308, fn. 13.)

[17]Although Labor Code section 2802 was not included among these statutes, it must be remembered that *Douglas* v. *Los Angeles Herald-Examiner, supra,* 50 Cal.App.3d 449, the case that first interpreted Labor Code section 2802 to provide indemnity for defense costs of any kind, did not occur until 1975, well after the 1963 enactment of the Tort Claims Act.

[18]It is no answer to say that Labor Code section 2802 only applies when the underlying action is unfounded. Not every possible tort action against a public employee involves malice as an element of the cause of action. Moreover, even where malice is an element of the underlying action, a defense verdict does not indicate an absence of malice. Even if it did, the failure of a plaintiff to sustain its burden of proving malice would not necessarily estop the public entity from later proving malice. (See *Tracy* v. *County of Fresno, supra,* 125 Cal.App.2d at pp. 57-58.)

[19]Plaintiffs correctly point out that there are situations encompassed by Government Code section 995.8 that are not within the scope of Labor Code section 2802. For example, Government Code section 995.8 allows a public entity, in its discretion, to pay defense costs for criminal charges brought against an employee regardless of the final outcome of the

indemnity structure of the Tort Claims Act by collective bargaining. Government Code section 996.6 provides that if the City agrees to indemnify the criminal defense costs of its employees, it may do so. Likewise, if the City decides to provide greater indemnity rights to its employees under a City ordinance, that ordinance will be upheld. Additionally, there may be certain situations in which the Legislature affirmatively decides that defense costs should be recovered even when they are not recovered under the Tort Claims Act. (See, e.g., Pen. Code, § 11163 [providing for recovery of defense costs incurred by health practitioners defending claims brought as a result of reporting injuries related to criminal activity, when such costs are not recovered under Government Code section 995].) Such statutes are permissible pursuant to Government Code section 996.6.

Given that the Legislature intentionally removed all statutes known to conflict with the Tort Claims Act at the time of its adoption, it is clear the statutory enactments referenced in Government Code section 996.6 were statutes yet to be enacted relating to specific public entities or specific conduct by public employees. Government Code section 996.6 was not meant to enable a general statute enacted over 25 years prior to the Tort Claims Act to force public entities to pay criminal defense costs the Tort Claims Act specifically exempted them from paying, particularly when that statute had not been interpreted to encompass any criminal defense costs at the time the Tort Claims Act was enacted.

## V. *Conclusion*

Public entities are not required to reimburse their employees for criminal defense costs incurred successfully defending against criminal charges arising out of conduct within the course and scope of employment. Public employees' rights to indemnification for criminal defense costs are governed solely by the comprehensive remedy enacted in the Tort Claims Act, which provides that indemnification of criminal defense costs is purely within the discretion of the public entity.[20] Labor Code section 2802 does not change this result.

---

prosecution, while Labor Code section 2802 would provide for the recovery of defense costs only when the prosecution was unfounded. However, the fact that certain situations may exist where the statutes do not conflict does not resolve the asserted irreconcilable conflict in *this* case, where both statutes purport to govern the same situation.

[20]Plaintiffs do not contend that the City abused its discretion in failing to provide criminal defense costs.

## DISPOSITION

The judgment is affirmed. The City is to recover its costs on appeal.

Turner, P. J., and Godoy Perez, J., concurred.